William Edward WALTERS, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 677S455.

Supreme Court of Indiana.

Sept. 20, 1979.

Donald G. Yates, Huntington, for appellant.

Theodore L. Sendak, Atty. Gen. of Indiana, Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted in a trial by jury of first degree murder, Ind. Code § 35–13–4–1 (Burns 1975). He was sentenced to life imprisonment. On appeal he asserts the following alleged errors:

(1) The violation of his constitutional rights.

(2) The admission of out-of-court statements and the trial court's refusal to grant defendant's motion for a mistrial based on the admission of the statements.

(3) The grant of immunity from prosecution to but one of the two men charged with being an accessory after the fact.

(4) The failure to declare a mistrial for prosecutorial misconduct.

(5) The sufficiency of the evidence to support the verdict.

\* \* \* \* \* \*

## ISSUE I

Defendant initially contends that his constitutional rights were violated but fails to direct the Court's attention to specific violations. He refers to "gross exaggerations * * * if not outright perjury" in the probable cause affidavit; unreasonable delay in the appointment of competent counsel; and evidence illegally secured, according to the defendant, as the "direct result of the illegal conduct of the law enforcement officers in general, and not any one specific act.".

Defense counsel correctly cites *Robinson v. State*, (1973) 260 Ind. 517, 297 N.E.2d 409, for the proposition that a federal constitutional error may be held harmless only where this Court finds it to be harmless beyond a reasonable doubt. *Robinson*, however, has no application here as the defendant has not set out any constitutional violation in context nor does he indicate any part of the record that might reveal such error.

 This Court cannot consider defendant's assertions of constitutional error without a detailed examination of the record. Defendant cannot, by merely alluding to error, encumber this Court with the obligation of searching the record in an attempt to reverse. In *Hill v. State*, (1977) Ind., 370 N.E.2d 889, 891, it was stated:

> "When evidence is not substantially set out in appellant's brief, questions depending thereon need not be considered. *Schell v. Schell*, (1927) 199 Ind. 643, 158 N.E. 594; *Talbott v. Town of New Castle*, (1907) 169 Ind. 172, 81 N.E. 724. The Supreme Court need not search the record to discover evidence not brought to brief. *Wood v. Chicago & E. R. Co.*, (1939) 215 Ind. 467, 18 N.E.2d 772, reh. den. 215 Ind. 467, 20 N.E.2d 642."

## ISSUE II

During its case-in-chief, the State called Indiana State Trooper Richard Reece. On direct examination he testified that his investigation started at the crime scene in Indiana at 2:00 a. m. and led step by step to a residence in Ohio where at 9:00 a. m. on the same morning he observed appellant washing blood out of the back seat of a blue Torino automobile which was parked out front on the street. During cross-examination of Reece, defense counsel brought out for the first time that this investigation had included a conversation between Reece and the victim's father. While defense counsel did not bring out the specific content of the conversation, he did, by such cross-examination, raise the implication that the officers had acted unreasonably, in the absence of a warrant and probable cause, when they went to the Ohio residence. On re-direct examination, over defendant's hearsay objection, the trial court permitted Reece to testify that the victim's father had said during the conversation that appellant had a "vendetta" against the victim because the victim had testified against the appellant in court. Reece was also permitted to testify that an Ohio police officer, Carl Teeters, advised Reece that the defendant had threatened Teeters' life because he, too, was to be a witness against the defendant.

At the close of Reece's testimony, the defense moved to strike the testimony and asked that the jury be admonished. The defense also moved for a mistrial. The court overruled the motions but admonished the jury that the testimony was not to be considered for the "verity of the statements * * * but only for the purpose of determining whether or not probable cause for the search and seizure was present * *."

Defendant contends that the testimony was erroneously admitted hearsay and that he was substantially prejudiced by its admission. Thus, he also argues that the trial court erred in overruling his motion for a mistrial.

 Hearsay is defined as an out-of-court statement offered in court to prove the truth of the matter asserted therein. *Jethroe v. State*, (1974) 262 Ind. 505, 319 N.E.2d 133; *Madison v. State*, (1971) 256 Ind. 353, 269 N.E.2d 164. In this case, the out-of-court statements were not offered to establish the truth of the matters asserted

therein; that is, the statements were not offered to show that the defendant harbored any ill feelings toward the victim or other persons. Rather, they were repeated to show why Reece had conducted his investigation as he did and to establish that he had probable cause for a search. When offered for these purposes, the testimony did not constitute objectionable hearsay. See *Roberts v. State,* (1978) Ind., 375 N.E.2d 215; *Ballard v. State,* (1974) 262 Ind. 482, 318 N.E.2d 798; *Boles v. State,* (1973) 259 Ind. 661, 291 N.E.2d 357.

■ Further, defendant's contention that the trial court erred in refusing to grant a mistrial is without merit. The evidence having been admissible, its admission can hardly be a basis for declaring a mistrial. The defendant was entitled to have the jury admonished as to the limited purpose for which the testimony could be considered. This he received from the court, sua sponte. He now complains that it was inadequate, but we believe it to have been minimally sufficient. In any event, there having been no in-trial objection addressed to the sufficiency of the admonition such error, if any, is not available on appeal. *Tyler v. State,* (1968) 250 Ind. 419, 236 N.E.2d 815; *Thomas v. State,* (1967) 248 Ind. 447, 229 N.E.2d 722.

### ISSUE III

John Kennedy and Richard Mills were with the defendant at the time the victim, Ronnie Parks, was shot. Both were charged with being an accessory after the fact. At the defendant's trial, Kennedy was granted immunity and testified for the State. Mills, who had not been granted immunity, was called as a defense witness. Upon advice of his counsel, Mills asserted his constitutional right to refuse to incriminate himself. A hearing was then held, outside the presence of the jury. The defense requested that the court grant Mills immunity, as the State had refused to do so. The court denied the request. The jury was recalled and the court explained to the jury that Mills had asserted his Fifth Amendment right against self-incrimination. The following day Mills returned to court without his attorney and testified for the defense. Defendant raises various arguments concerning the State's grant of immunity to Kennedy and its refusal to treat Mills in the same manner.

■ Defendant first argues that he was denied equal protection in that the State can grant immunity but a defendant cannot. He ignores that equal protection rights apply only to those within the same class. The mandate for equal protection of the law does not prevent different treatment of persons in different classifications, if the classifications are reasonable and serve a legitimate purpose. See *Williams v. Rhodes,* (1968) 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24; *Rinaldi v. Yeager,* (1966) 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577; *McLaughlin v. Florida,* (1964) 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222; *Skinner v. Oklahoma,* (1942) 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655.

■ The granting of immunity is somewhat analogous to plea-bargaining in that the State must often use such means with reluctant, but essential, witnesses. The State alone has the responsibility of prosecuting crimes. To meet that responsibility, the State, not the defendant, must have the authority to grant immunity. There is no unlawful denial of equal protection here.

■ The next argument the defendant raises is that the failure of the State and the court to grant immunity to Mills "tainted" Mills' testimony and thus, impaired his credibility. The statute (Ind.Code § 35–6–3–1) which permits the State to grant immunity is for the benefit of the State; the State need not grant immunity to a defense witness merely because the failure to do so possibly tarnishes the credibility of the witness.

■ Closely aligned with defendant's contention that the failure to grant immunity to Mills impaired his credibility is defendant's assertion that the jury was not fully informed of Kennedy's immunity. This, according to the defendant, "enhanced" Kennedy's credibility. In this re-

gard, he relies on *Newman v. State*, (1975) 263 Ind. 569, 334 N.E.2d 684, where this Court stated that the testimony of an accomplice is "highly suspect," and therefore, the jury should be aware of all the circumstances that may have induced the accomplice to testify. The Court continued:

" '[W]hen the prosecution relies upon the testimony of a co-conspirator to obtain conviction of the accused, the co-conspirator's credibility is an important issue in the case, and evidence of any understanding or agreement as to future prosecution of the co-conspirator must be disclosed to the jury.' *Birkla v. State*, (1975) Ind., 323 N.E.2d 645 at 648." *Newman, supra*, 263 Ind. at 573, 334 N.E.2d at 687.

Other cases are in accord. *E. g.*, *Hoskins v. State*, (1978) Ind., 375 N.E.2d 191; *Adler v. State*, (1967) 248 Ind. 193, 225 N.E.2d 171.

While these cases speak of informing the jury of any agreement that might reflect upon the credibility of a witness, it appears that the purpose is served if the defense is so informed.

In this case, defendant and his counsel were present when Kennedy was granted immunity. Defense counsel, on cross-examination of Kennedy, asked only if he understood that he would not be prosecuted for his involvement in the murder. The defense could have been more explicit in making the jury aware of the exact nature of the transaction between Kennedy and the State. Further, the State, on re-direct examination, revealed to the jury that Kennedy had been granted immunity. Thus, the evidence was properly before the jury for their consideration in weighing the credibility of the witness.

Defendant finally argues that the prosecutor made "repeated assertions, designed to improve his witness' credibility, that immunity had not been granted to Kennedy against perjured statements." While it is not clear, the defendant apparently believes this confused or misled the jury so that they believed this was the only immunity granted. As in Issue I, the defendant fails to indicate any part of the record that might reveal these "repeated assertions," and for the reasons stated in our treatment of Issue I, we will not consider this argument.

### ISSUE IV

■ On cross-examination of defense witness Richard Mills, the prosecutor asked Mills if he had given a statement on March 5, 1974, at Ligonier, Indiana. Defense counsel objected and asked to approach the bench. Following the discussion at the bench, the prosecutor asked Mills to answer the question. Mills replied that he spoke to a man "running a lie detector's test." The defense again objected and moved the court to strike the answer and to admonish the jury. The motion to strike was granted and the court admonished the jury to disregard "the volunteer statements of the witness." Subsequently, the prosecutor made other references to the statement. On some such occasions, defense counsel objected, but often he did not, and he never moved for a mistrial premised upon improper questioning of the witness.

On appeal, however, the defendant contends that the prosecutor's continued references to the polygraph test amounted to prosecutorial misconduct. He asserts that the trial court erred in failing to declare a mistrial for the alleged misconduct. He cites *Williams v. State*, (1978) Ind., 375 N.E.2d 226 to support his contentions. In *Williams*, however, the prosecutor deliberately asked a witness if he had taken a polygraph examination. Here, Mills made only an incidental reference to a polygraph examination and, more importantly, he voluntarily provided the information. The statement was not induced by the prosecutor.

The State's repeated references to the statement were obvious attempts to lay a foundation for impeachment. By referring to the date and place, the prosecutor was doing what is required when attempting to impeach a witness with a prior inconsistent statement. That the prior statement had allegedly been given to a polygraph examiner does not preclude its use for impeachment purposes. There was, therefore, no misconduct on the part of the prosecutor.

Of greatest significance, however, is that Mills' suggestion of his having taken a lie-detector test was stricken, and the jury was admonished as requested by the defense. Such an admonishment presumptively cures an error. *See* Issue II. There was no cause to declare a mistrial. But, even had there been, no motion for one was made.

## ISSUE V

 Finally, defendant contends the verdict against him was not warranted because there was insufficient evidence to show premeditated malice. On appeal this Court will not weigh the evidence nor judge the credibility of the witnesses. *Robinson v. State*, (1977) 266 Ind. 604, 365 N.E.2d 1218. Only the evidence most favorable to the State and all reasonable inferences to be drawn therefrom will be considered to determine if there existed sufficient evidence of probative value to support the determination of guilt beyond a reasonable doubt. *Baum v. State*, (1967) 264 Ind. 421, 345 N.E.2d 831. In light of this rule of appellate review, it is not necessary to review all the evidence, parts of which were admittedly somewhat contradictory. Instead, this Court will recount the evidence which, contrary to defendant's position, supported the guilty verdict, under the aforementioned standards.

 The evidence most favorable to the State shows that on March 2, 1974, the incident began in Union City, Ohio, where the defendant was observed hitting the decedent, Ronald Parks, who had been a witness against the defendant in prior court proceedings. After hitting Parks, the defendant got into his car and, accompanied by John Kennedy and Richard Mills, drove away. A shotgun was in the back seat of the car.

Shortly thereafter, the three men saw Parks walking along the street alone. The defendant repeatedly told Parks to get into the car. Parks refused, and the defendant got the gun from the back seat. Parks them got into the car with the men. As they drove west, toward Indiana, the defendant told Parks to look around as he would never "see Union City alive again."

While driving, the defendant kept asking Parks why he had lied when he testified against him in court. Parks, following several denials that he had done so, ultimately admitted that he had lied. In the midst of this, the defendant "slapped" Parks a "couple of times."

The defendant stopped the automobile in a secluded area in Jay County, Indiana, and ordered Parks to get out, but Parks refused to leave. When the defendant attempted to pull Parks from the car, a scuffle ensued and the two men wrestled over the gun. Then, according to testimony, Parks "let go of the gun." He "turned around and put both hands behind his head and said please Pete don't." The defendant then shot Parks.

The men left Parks' body at the scene of the shooting and disposed of the gun. They returned to Ohio where they attempted to clean the blood from the automobile. There was also testimony that, on the return trip, the defendant made a statement to the effect that it "served [Parks] right."

Defendant's argument that the evidence of malice is wanting, in view of evidence that he and Parks had wrestled for the gun, is without merit, in view of our rules of "sufficiency" review and the abundant evidence of probative value that he shot Parks deliberately and for revenge.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.