George REESE, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 582S169.

Supreme Court of Indiana.

Aug. 31, 1983.

Rehearing Denied Nov. 3, 1983.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted following a jury trial of Conspiracy to Commit Arson, a class B felony, Ind.Code § 35–41–5–2 (Burns 1979) and sentenced to twelve (12) years imprisonment.

This direct appeal raises five issues:

1. Whether the trial court erred in denying Defendant's motion for a mistrial which was made after a witness for the State referred to a lie detector test that she had taken.

2. Whether the trial court erred in permitting evidence of the acts of the Defendant to be presented prior to proof that a conspiracy had occurred.

3. Whether the verdict is supported by sufficient evidence.

4. Whether the trial court erred in admitting evidence that Defendant had threatened a State's witness.

5. Whether the trial court erred in imposing an aggravated sentence.

The evidence most favorable to the State disclosed that on October 23, 1980 the Elkhart City Police Department received a telephone call from a female stating that a house at 934 Hubbard Street was going to burn. The house was "staked out," but no fire occurred. On October 25, 1980 the police received an identical call and again watched the building. One of the officers testified that around 10:00 p.m. he saw a light in an upstairs window and a black male therein. When checking the house at 12:30 a.m., the officers observed that the house was on fire and called the fire department. The house, worth approximately $8,600, suffered $5,000 damage. An officer testified that the fire, in his opinion, was started by means of some type of flammable fluid. Subsequently, a laboratory analysis revealed the presence of gasoline on the second floor of the house.

The house was owned by Duane Farrell who had sold the house to Defendant on an

installment contract. Because Defendant was approximately one year delinquent in his monthly payments, Farrell had instituted legal proceedings against the defendant some time before the date of the fire. Under the terms of the contract, Defendant was to insure the house; however, the only insurance, which was in the amount of $8,000 had been procured on September 25, 1980 and was on the contents of the house.

The week before the fire, Defendant began to move pieces of furniture from the residence at 934 Hubbard to the homes of various acquaintances or friends.

One of Defendant's neighbors, Rosalind Williams, testified that she had overheard the Defendant state that he was planning to have someone burn his home. She said that she overheard the Defendant ask Joner Beal to do this favor for him for about $250.00.

Another of Defendant's acquaintances, Herman Bailey, testified that Defendant had told him that he wanted to have someone burn his house for the insurance money. Bailey said that he might consider doing it for $1,000 or $2,000. Defendant, however, mentioned only $250.00, and the subject was dropped. Bailey further testified that on the day before the fire Defendant said that he was going out of town, borrowed a car belonging to Bailey's wife, and asked Bailey to get his mail on Saturday. He also told Bailey not to be at the house after 8:30 or 9:30 at night.

Susan Parker, a former girlfriend of the Defendant, testified that she had had conversations with the Defendant about a possible fire at his house and that she was the person who had on both occasions, called the police concerning the possibility of such fire. She further testified that the Defendant had told her he was going to have Joner Beal set the house on fire so that he could get some insurance money and that Beal, who smelled of gasoline, came to her house late on the night of the fire and made a phone call. Parker also testified that when Defendant returned from his trip, he told her that Beal "didn't set it [the fire] right." She also testified that Bailey had told her

to stay away from the Defendant's house after midnight on the night of the fire. Finally, she testified that she had been afraid to testify because the Defendant had threatened to harm her if she did so.

\* \* \* \* \* \*

## ISSUE I

Defendant argues that a mistrial should have been granted as a result of the following exchange between the Prosecutor and Witness Parker:

"Q. Susie, there came another time after you first talked to Detective Schenk and Investigator Holderman that you did tell the police who set the fire, is that correct?

"A. Yes, after I got on one of those lie detectors."

The trial court denied the motion for mistrial, but admonished the jury to disregard the testimony. Defendant contends that Parker's testimony unfairly prejudiced him and diminished his right to a fair trial, inasmuch as the jurors could infer that the Witness had passed the polygraph test in light of her appearance as a State's witness. This, Defendant argues, would have enhanced Parker's credibility to the Defendant's detriment. Further Defendant contends that the trial court's admonishment could not have cured the prejudice already wrought by the witness' statement.

Defendant correctly notes that in general the results of a polygraph examination of a witness or a party are inadmissible in a criminal prosecution absent a waiver or stipulation by the parties. *Dean v. State,* (1982) Ind., 433 N.E.2d 1172, 1178; *Kimmel v. State,* (1981) Ind., 418 N.E.2d 1152, 1157, *cert. denied* 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239; *Pavone v. State,* (1980) Ind., 402 N.E.2d 976, 978. This rule has been extended to encompass even the mention that a party or a witness took a polygraph examination. *Vacendak v. State,* (1976) 264 Ind. 101, 110, 340 N.E.2d 352, 357, *cert. denied* 429 U.S. 851, 97 S.Ct. 141, 50 L.Ed.2d 125.

The denial of a motion for mistrial, however, will be reversed only upon a showing of an abuse of discretion by the trial court. The case must be reversed only if the statement was so prejudicial as to have placed the defendant in "a position of grave peril to which he should not have been subjected." *Morgan v. State,* (1981) Ind., 419 N.E.2d 964, 967. The declaration of a mistrial is an extreme action which is warranted only "when no other action can be expected to remedy the situation." *Gambill v. State,* (1982) Ind., 436 N.E.2d 301, 304; *Hicks v. State,* (1979) Ind., 397 N.E.2d 973, 975. As a general rule, if the jury is admonished by the trial court to disregard a statement at trial, no reversible error will be found. *Ward v. State,* (1982) Ind., 438 N.E.2d 966, 967; *Page v. State,* (1980) Ind., 410 N.E.2d 1304, 1307.

The question of whether Defendant was so prejudiced that the admonishment could not cure the error is one that must be determined by examining the facts of the particular case. The burden is on Defendant to show that he was harmed and placed in grave peril by the denial of the mistrial motion. *White v. State,* (1971) 257 Ind. 64, 77–78, 272 N.E.2d 312, 319–20.

Defendant first relies on *White v. State, supra,* wherein even though objectionable testimony was struck and the jury admonished, the Court held that it was reversible error to refuse to grant a mistrial. A major difference between *White* and the case at bar is that in *White* the sole purpose for calling the witness was to elicit the objectionable testimony. Counsel deliberately calculated the introduction of the "evidentiary harpoon" in order to prejudice the jury. Further, in *White* the evidence contained serious conflicts which would have entitled the jury to go either way upon the issue of the defendant's guilt or innocence. Consequently, the Court did not want the jury to be influenced by improper testimony that was deliberately induced by the prosecutor.

In *Williams v. State,* (1978) 268 Ind. 365, 375 N.E.2d 226, another case upon which Defendant relies, a primary witness linking the defendant to the crime was asked by the prosecutor if he had taken a polygraph exam. The Court held that it was error to deny the mistrial motion. *Williams,* too, is distinguishable from the case at bar. There the court did not admonish the jury, and the witness had been asked the question by the prosecutor solely to reinforce his credibility inasmuch as he was the State's primary witness linking the defendant to the crime.

Cases which are more similar to the case at bar are *Walters v. State,* (1979) 271 Ind. 598, 394 N.E.2d 154 and *Austin v. State,* (1974) 262 Ind. 529, 319 N.E.2d 130, *cert. denied* 421 U.S. 1012, 95 S.Ct. 2417, 44 L.Ed.2d 680. In *Walters,* a witness said that he spoke to a man "running a lie detector's test." An objection was made; the testimony was struck and the jury admonished. The Court held that no reversible error had occurred inasmuch as the witness volunteered the information, the question did not deliberately call for the answer, and the prosecutor did not in any way induce the response. Most importantly, however, the jury was admonished. *Walters, supra,* at 158–159.

In *Austin,* a police officer was testifying as to where he went with the Defendant. He testified that he accompanied the defendant to an "Indiana State Police Post where a polygraph ..." Defense counsel immediately moved for a mistrial, but the motion was denied. The jury was instructed to disregard the witness' statement and to give it no consideration. The Court reasoned:

"If the defendant underwent a polygraph test, such fact should not have been disclosed to the jury—directly or indirectly, but we do not draw the harmful conclusion that the defendant does. The mention of the word "polygraph" was probably erroneous—but harmless. Certainly it did not rise to the level compelling a mistrial within the guidelines set forth in *White v. State.* 'Voluntary testimony of witnesses frequently cannot be controlled by counsel during questioning. However, even if the testimony of

the witness was prejudicial to the appellant the action of the court in admonishing the jury to disregard that testimony, ordering it stricken from the record and ordering the jury not to consider the same, cured the defect.' " *McPhearson v. State,* (1966) 247 Ind. 579, 583, 219 N.E.2d 907, 910.

*Austin, supra,* at 133.

In the case at bar, as in *Walters* and *Austin,* the answer given by Parker was not deliberately induced. Rather, it was an unwitting response to a proper question. The gauge, however, is not exclusively the way in which the testimony entered the case; but rather, the probable impact of the irregularity upon the verdict is of prime importance. *Davis v. State,* (1981) Ind., 418 N.E.2d 203, 205. Defendant argues that it was Parker's "testimony and her testimony alone from which a conspiracy could be inferred." Defendant, however, ignores the prior testimony of both Rosalind Williams and Herman Bailey which had linked Defendant to the crime and from which a jury could have inferred a conspiracy.

The trial court properly admonished the jury. The Defendant has failed to show an abuse of discretion by the trial court and has failed in his burden to show that he was placed in grave peril by the ruling even, assuming arguendo, that it was erroneous.

## ISSUE II

Defendant next contends that the trial court erred in allowing Witness Schenk to testify before the presentation of evidence showing the existence of a conspiracy. A continuing objection as to the order of proof was made. Schenk testified that the Police Department received a phone call from a female who said that a house was going to burn down, that he and his partner "staked out" the house, that during the course of the night a vehicle pulled up, a person jumped out of the vehicle and ran in the front door and a few minutes later came back out and jumped in the car and left with the lights out, that later investigation determined the car was owned by Defendant, and that nothing else occurred on

that night. He further testified that two days later another call was received about the possible burning of the same house, that again he and his partner "staked out" the house, that there were lights on upstairs in the house, that a "not real tall" black male was seen in the window, that about 12:30 a.m. he noticed the house was on fire, and that subsequent investigation revealed that, in his opinion, the fire was started with gasoline.

In presenting his argument, Defendant relies upon *Patton v. State,* (1961) 241 Ind. 645, 648, 175 N.E.2d 11, 12–13 in which the Court stated, "[B]efore the acts or declarations of one conspirator are admissible into evidence against a coconspirator, there must be some evidence, either direct or circumstantial of the existence of a conspiracy." (citations omitted).

Defendant is apparently arguing that Schenk's testimony refers to acts of one or more conspirators and that it should have been presented only after evidence showing that a conspiracy existed. However, all that Schenk's testimony presents is evidence of how he became involved in the case, what he saw, and that, in his opinion, the fire was the result of arson. He never identified the driver of the car he witnessed at 934 Hubbard as the Defendant; he never identified the "not real tall" black male as Beal. He did not refer to specific acts of any alleged conspirators at all; thus, no evidence of a conspiracy was required to precede his testimony.

## ISSUE III

Defendant argues that the verdict is not supported by sufficient evidence. He contends that the evidence failed to establish either that Joner Beal agreed with him to burn the house or that an affirmative act was taken by Joner Beal in furtherance of the conspiracy.

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found there-

from, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." *Loyd v. State,* (1980) Ind., 398 N.E.2d 1260, 1264, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. (citations omitted).

Ind.Code § 35–41–5–2 (Burns 1979) regarding conspiracy provides:

"(a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. However, a conspiracy to commit murder is a class A felony.·

"(b) The state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement.

"(c) * * *."

Defendant contends that the evidence failed to establish anything more than an association between the Defendant and Beal. We disagree. The law does not require a formal agreement; the existence of the agreement may be inferred from the conduct of the parties or proved by circumstantial evidence. *Woods v. State,* (1980) Ind., 413 N.E.2d 572, 573; *Patterson v. State,* (1979) 270 Ind. 469, 478, 386 N.E.2d 936, 942, *cert. denied* (1979) 444 U.S. 935, 100 S.Ct. 283, 62 L.Ed.2d 194. The intent may be inferred from the acts committed and the circumstances surrounding the case. *Young v. State,* (1971) 257 Ind. 173, 177, 273 N.E.2d 285, 287. A conviction for conspiracy may be based solely upon circumstantial evidence. *Patterson, supra,* at 942.

The State did produce substantial evidence of probative value sufficient to establish every material element of conspiracy. In light of the combined circumstantial evidence presented by several witnesses, the jury could have reasonably inferred that Reese and Beal conspired to commit Arson.

## ISSUE IV

Defendant argues that the court erred in allowing into evidence testimony that the Defendant had threatened to harm Witness Parker if she testified against the defendants. Prior to the trial, Defendant Beal had made a motion in limine to keep that testimony out, but the motion was denied. During the direct examination of Parker, she testified as follows:

"Q. And did he threaten you in any way about your testimony?

"A. He said that he was going to burn us up."

No objection was made by defense counsel at the time Parker gave this testimony.

The ruling upon the motion in limine is not reviewable upon appeal. Harmful error, if any, occurs only when the evidence that was questioned is admitted during the trial. However, if any error as to the admissibility of the evidence is to be available for appellate review, a proper objection must be entered at the time the evidence is offered. *Springer v. State,* (1982) Ind., 437 N.E.2d 998, 1000; *Akins v. State,* (1981) Ind., 429 N.E.2d 232, 237; *McCraney v. State,* (1981) Ind., 425 N.E.2d 151, 153.

## ISSUE V

Defendant was found guilty of the class B felony of Conspiracy to Commit Arson, Ind.Code § 35–41–5–2 (Burns 1979) and Ind.Code § 35–43–1–1 (Burns Supp. 1982). A class B felony is punishable by a presumptive sentence of ten (10) years to which ten (10) years may be added for aggravating factors and four (4) years subtracted for mitigating factors. Ind.Code § 35–50–2–5 (Burns 1979).

Defendant contends that the sentence imposed is unreasonable and that the action of the court in adding (2) years to the presumptive sentence of ten (10) years is not supported by the facts or the court's findings.

During the sentencing hearing the court stated its reasons for enhancing the sentence as follows:

"As to the defendant Reese, the Court would find that the defendant does not have any prior felony conviction; that

therefore the penalty to be imposed by the Court is not mandatory; the Court would find, however that based upon the extensive record of the defendant dating back to the year 1964 which record encompasses five Larceny or Theft type of charges, all of said offenses being as misdemeanors, but nevertheless the record of the defendant would aggravate the sentence above the presumptive sentence imposed by the Legislature, and would also mandate against consideration. The Court would accordingly commit the defendant Reese to the Department of Corrections of the State of Indiana for a determinate period of 13 years. The defendant Reese is entitled to receive 33 days credit at Class I goodtime earning rates."

The sentence was later reduced by one (1) year to a term of twelve (12) years because of a plea bargain in another cause.

Defendant contends that the court's findings in support of the aggravated sentence are inadequate. In *Page v. State,* (1981) Ind., 424 N.E.2d 1021, 1023, the Court stated:

"Although our rule for review of sentences provides that no sentence authorized by statute will be revised unless manifestly unreasonable, the statement of reasons should not be given grudgingly. Rather, it will not only be helpful to the reviewing court but will benefit the trial judge as well, if the chore be approached with a view towards assuring a stranger to the case that the sentence imposed was fair and reasonable under all the circumstances. Not only will detailed findings be reassuring to the concerned community, but also compliance with such procedure will avert oversights and impassioned judgments and permit both the sentencing judge and the reviewing judges to live free of inner doubts.

"Statements should reflect both aggravating factors and mitigating factors of significance. A failure to find either when clearly supported by the record may reasonably give rise to a belief that they were overlooked, hence not properly considered."

In the case at bar, the trial court cited as an aggravating circumstance the Defendant's extensive record, dating back to 1964, which encompasses five (5) Larceny or Theft charges. As a mitigating factor, the trial court cited the fact that Defendant did not have any prior felony conviction. This is a sufficient statement by the trial court of its reasons for enhancing the sentence. However, assuming arguendo that the statement of reasons was inadequate, Defendant failed to raise this issue in his Motion to Correct Errors. We addressed this oversight in *Beasley v. State,* (1983) Ind., 445 N.E.2d 1372, 1375 in which we wrote:

"He [Defendant] admits, however, that this error was not raised by the Motion to Correct Error, but claims that it is fundamental error. The record, however, contains the pre-sentence investigation report, and it recites Defendant's lengthy criminal history which includes prior convictions for Entering to Commit a Felony and First Degree Burglary. Given the opportunity, by advisement in the Motion to Correct Errors, the trial court could easily have provided a statement evidencing that the enhancement of the sentence was justifiable. The record affirmatively discloses that the sentence is not manifestly unreasonable in light of Defendant's criminal record. The error is, therefore, not fundamental. Rather, it appears that defense counsel merely abandoned a potential but meritless assignment of error."

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.