Walter GOUDY, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 48S00–9604–CR–296.

Supreme Court of Indiana.

Nov. 26, 1997.

Rehearing Denied March 18, 1998.

Mark Maynard, Anderson, for Defendant–Appellant.

Jeffrey Modisett, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, for Plaintiff–Appellee.

SELBY, Justice.

Walter Goudy ("defendant") was tried before a jury and found guilty of Murder, Attempted Murder, Attempted Robbery, and Attempted Carjacking. He was sentenced to 60 years for the Murder; 50 years for Attempted Murder to be served consecutively with the 60 year Murder conviction; 50 years for the Attempted Robbery to be served concurrently with the Murder conviction; and 20 years for the Attempted Carjacking to be served concurrently with the Murder and Attempted Robbery convictions.

In this direct appeal, defendant raises the following nine issues for review: 1) Did the trial court err in denying a motion for discharge pursuant to Indiana Criminal Rule 4(C)? 2) Was there reversible error in the trial court's refusal to suppress evidence associated with the warrant of arrest? 3) Was there reversible error in the trial court's refusal to suppress identification evidence based upon an allegedly tainted police lineup procedure? 4) Did the trial court err in refusing to compel production of certain police reports for *in camera* review? 5) Should a mistrial have been declared because the prosecutor refused to grant immunity to two witnesses? 6) Should the law be changed with regard to certain types of jury instructions? 7) Was there fundamental error in the failure of the trial court to instruct the jury on the intent element of attempted murder? 8) Did the trial court err in entering judgment and sentence on both the Attempted Robbery and the Attempted Carjacking charges? 9) Did the trial court err in refusing to continue the sentencing hearing? We answer all these questions in the negative except issue eight. The cause is accordingly remanded for the entry of a new sentencing order consistent with this opinion.

FACTS

On the night of October 2, 1993, Marvin McCloud was driving his 1987 gold colored Cadillac in Anderson, Indiana. Defendant and some companions observed McCloud's car and commented on the wheels and tires on the vehicle. Defendant and at least one of the men he was with agreed to "jack" McCloud—that is, to rob him of his car. Driving in a vehicle owned by defendant, they followed McCloud to a bar.

When McCloud left the bar, he returned to his car along with two friends. The three entered McCloud's vehicle and proceeded to drive away. McCloud was driving, Damon Nunn was sitting in the front seat, and Jill Barkley was in the back seat. As McCloud's car exited a parking lot, defendant and another man came alongside the car, one on either side, and began firing shots from handguns into the vehicle. McCloud and Damon Nunn were struck by bullets from the gunfire. The injured Nunn was able to take control of the vehicle from the unconscious McCloud and pilot the car away from the shooting scene to a hospital. McCloud died shortly after arriving at the hospital.

At trial, Damon Nunn positively identified defendant as one of the persons who shot into McCloud's vehicle. Jill Barkley, the backseat passenger, also identified defendant at trial as one of the shooters. Jackie Barkley, Jill Barkley's sister, was a witness to the shooting. She, too, testified at trial that defendant was one of the shooters. Latonia Young also was a witness who saw defendant fire shots into the McCloud vehicle. Kaidi Harvell was with defendant on the night of the shootings. Harvell testified about the activities of defendant leading up to the shooting and also identified defendant as one

of the two men who fired shots into McCloud's vehicle.

Defendant's defense was that he was at a party in his home in Indianapolis at the time of the murder. However, in addition to the witnesses above who saw defendant fire the shots into McCloud's car, two other witnesses placed defendant in Anderson, Indiana just before the shooting.

DISCUSSION

I. Speedy trial.

Defendant was initially charged with Murder and Attempted Murder in February of 1994. He was arrested and jailed on these charges. On March 14, 1994, defendant filed a request for a speedy trial pursuant to Indiana Criminal Rule 4(B)(1). That Rule provides, in part:

> If any defendant be held in jail or on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion....

A trial date of May 23, 1994 was set. This was within the seventy day period anticipated by Criminal Rule 4(B)(1).

On May 16, 1994, the charges against defendant were dismissed at the request of the prosecutor after defendant submitted a list of sixteen alibi witnesses. After investigating the matter further, the prosecutor refiled the original charges on April 7, 1995, and at the same time added the Attempted Robbery and Attempted Carjacking counts. When the new charges were filed, however, defendant was absent from the jurisdiction. Defendant was ultimately arrested on April 11, 1995, while he was being released from an unrelated detention in St. Louis, Missouri.

■ The seventy-day speedy trial clock is stopped if charges against a defendant are dismissed, but will begin running again where it left off if the State refiles the charges. *Hornaday v. State*, 639 N.E.2d 303 (Ind.Ct.App.1994), *trans.denied.*

■ Although the new charges were filed on April 11, 1995, the clock did not recommence on that date because defendant was absent from the jurisdiction when the charges were again filed. Criminal Rule 4(B)(1) by its own terms applies only when "any defendant be held in jail." Thus, the speedy trial clock did not begin to run again until defendant was again held in jail in Indiana. *Accord State ex rel. Turner v. Hancock Circuit Court*, 270 Ind. 320, 385 N.E.2d 447, 448 (1979). Thus, to the extent that defendant is otherwise entitled to the benefit of Criminal Rule 4(B)(1), the speedy trial clock recommenced on April 21, 1995, when he appeared before the trial court following his waiving of extradition from Missouri.

Sixty-three days lapsed between the filing of his motion for a speedy trial and his discharge (from March 14, 1994 until May 16, 1994). Defendant argues that in failing to set the cause for trial by April 28, 1995 (seven days after being returned to the jurisdiction), the State failed to provide him with a trial within the seventy day period described in Criminal Rule 4(B)(1). He asserts the trial court thus erred in denying his motion for discharge filed May 1, 1995.

■ We find no error. At the hearing held April 21, 1995, the trial court scheduled an omnibus date of June 21, 1995. Defendant made no objection to the setting of that date, which was well outside the window of time within which defendant asserts he should have been brought to trial following his return to Indiana to face charges. A defendant who permits the court, without objection, to set a trial date outside the seventy day limit will be deemed to have acquiesced therein. *Altmeyer v. State*, 519 N.E.2d 138, 140 (Ind.1988). This same rule has been applied where the trial court has scheduled an omnibus hearing outside the seventy day limitation period. *Fink v. State*, 471 N.E.2d 1161, 1163 (Ind.Ct.App.1984). Thus, defendant waived his earlier speedy trial request by acquiescing in the setting of an omnibus date, and by necessary implication, a trial date, beyond the seventy day limit permitted by Criminal Rule 4(B)(1).

Because of our disposition of this issue, we need not and do not address whether the additional charges added by the prosecutor arose out of the same transaction or were based on substantially the same factual allegations for purposes of relating back to the

original charging information. *See Gamblin v. State*, 568 N.E.2d 1040 (Ind.Ct.App.1991) (speedy trial deadlines may not apply to subsequently filed separate and distinct offenses, but may apply where subsequent charges are based upon substantially the same factual allegations or transaction).

## II. Allegedly invalid warrant.

Prior to trial, defendant filed a motion to suppress any evidence derived from his detention pursuant to an arrest warrant issued February 11, 1994. The warrant was limited in scope, being for the "purposes of obtaining photographs, fingerprints, and participate in a physical lineup." (R. at 384–85.) While in the custody of the police, defendant was put in a lineup for possible identification by potential witnesses. Among the witnesses who participated in that lineup who would later testify at trial were Damon Nunn, Jill Barkley, Jackie Barkley, Latonia Young, and Carla Goree.

Defendant claimed at the suppression hearing and asserts now on appeal that the warrant was invalid because of allegedly misleading testimony given by a police officer at the probable cause hearing leading to the issuance of the warrant. He asserts the identification evidence from the lineup should therefore be suppressed.

■ To preserve a suppression claim a defendant must make a contemporaneous objection at trial that is specific enough to alert the trial judge fully to the legal issue being raised. *Moore v. State*, 669 N.E.2d 733, 742 (Ind.1996). Where the defendant fails to object to the introduction of evidence, makes only a general objection, or objects only on other grounds, the defendant waives the suppression claim. *Id.*

The only objections during trial that might be related to the allegedly invalid warrant and the evidence derived therefrom were defendant's objection to the identification testimony of Jackie Barkley on the basis of "the previously raised issue" (R. at 1403); to the identification evidence of Jill Barkley on the basis of "issues we've previously raised" (R. at 1444); and to the identification testimony of Carla Goree "based on our previously raised motions" (R. at 2120). No objection was made to the identification testimony of Damon Nunn or to that of Latonia Young. Considerable testimony was also placed into evidence concerning the arrest and police lineup procedures without objection from defendant.

However, we choose not to determine whether the minimal objections made at trial were sufficient to preserve the allegation of error raised and instead address on the merits the assertion that the issuing warrant was invalid.

■ Suppression is an appropriate remedy if the magistrate or judge issuing the warrant is misled by information that is known to be false or that would be known by the person offering the testimony to be false except for his reckless disregard of the truth. *Bradley v. State*, 609 N.E.2d 420, 423–24 (Ind.1993), *citing United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677, 698–99 (1984).

At the probable cause hearing, a police officer testified that the passenger in the back seat of McCloud's car, Jill Barkley, had viewed defendant "in a lineup and identified him as one of the gunmen in the murder of Marvin McCloud." (R. at 380.) Later in the hearing, the court asked the officer: "Then you had a person who was in the back seat of the McCloud vehicle at the time of the shooting who made a positive identification?" The officer replied, "That's correct." (R. at 384.) Defendant asserts this was misleadingly false testimony because Jill Barkley had identified defendant in a "one-person" lineup and the police officer knew it.

Barkley had been asked to come to the police station to view a suspect in the McCloud shooting. She was taken to a room with one-way glass and asked if she recognized the person in the room. The only person in the room was defendant, who had voluntarily agreed to come to the police station. Barkley told police that she "would never forget his face" and that the person in the room was the man who had fired into McCloud's car on the passenger side. (R. at 441–42.)

A one-on-one "show-up" is inherently suggestive and carries with it a potential for irreparable misidentification. *Wethington v. State,* 560 N.E.2d 496, 501 (Ind. 1990), *citing Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967). Thus, the fact that the identification was made in a one-on-one situation was relevant and should have been disclosed by the officer at the probable cause hearing. Nevertheless, the officer's testimony at the probable cause hearing was not false. Barkley did in fact positively identify defendant as one of the shooters and did so in unmistakably clear terms.

Further, other indicia of probable cause to issue a limited arrest warrant were placed into evidence at the probable cause hearing, the veracity of which are not challenged by defendant. The testifying officer also stated that telephone calls had been made to police asserting that "one of the men who had killed Marvin McCloud was in the Oasis right now." (R. at 378.) The caller or callers provided information about the man's clothing and physical description. Upon immediate investigation, police officers traveled to the Oasis tavern, and found a man there who matched the description provided by the caller. The person turned out to be defendant. The issuing judge was also told that although defendant had initially agreed to travel to Anderson to participate in a lineup, he had become recalcitrant about doing so and that the police were therefore "requesting a limited warrant to compel [defendant] to appear in a physical lineup to be viewed by other witnesses." (R. at 380–81.) In addition, the officer testified at the probable cause hearing that Latonia Young, a witness to the murder, had stated to him that one of the killers had a "unique appearance" matching that of defendant. (R. at 383.)

Finally, the warrant that was actually issued was for the limited purpose of obtaining photographs, fingerprints, and to participate in a physical lineup.

The limited warrant was not based upon information known to be false and the trial court did not err in denying the motion to suppress evidence obtained during its execution.

III. Allegedly tainted police line-up procedures.

A. The February 15 police lineup.

Defendant also filed a pretrial motion to suppress the testimonial identification evidence of Damon Nunn, Jill Barkley, Jackie Barkley, Latonia Young, and Carla Goree on the basis that the previously mentioned lineup that occurred on February 15, 1994 was impermissibly suggestive. The trial judge held a hearing and took evidence on the motion, and also viewed a videotape recording of the lineup proceeding. The trial court denied the motion to suppress.

For the same reasons identified in the preceding discussion, it is questionable whether defendant sufficiently preserved for appellate review the issue of whether the police lineup procedure was impermissibly suggestive. In particular, and as noted above, no objection at all was made to the identification testimony of Damon Nunn or to that of Latonia Young. Nevertheless, we again will assume without deciding that the issue was properly preserved and address the merits of defendant's contentions with regard to the lineup procedures.

Where a trial court has admitted evidence of pretrial and in-court identification of a person accused of a crime, the reviewing court must determine, under the totality of the circumstances, whether the pretrial confrontation was so suggestive and conducive to irreparable mistaken identification as to deny the accused due process of law under the Fourteenth Amendment. *Harris v. State,* 619 N.E.2d 577, 580 (Ind. 1993), *quoting Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In making this determination, the reviewing court must decide whether law enforcement officials conducted the out-of-court procedures in such a fashion as to lead the witness to make a mistaken identification. *Harris,* 619 N.E.2d at 580, *citing Brooks v. State,* 560 N.E.2d 49, 55 (Ind.1990).

In sum, defendant argues that the other participants were dissimilar enough in dress, build, and general appearance as to render

the lineup impermissibly suggestive under the standard enunciated above.

We disagree. In this instance, the police lineup was composed of six persons. All six were young African–American males. All six were wearing black baseball caps turned backwards. One of the six (not defendant) was wearing a white tee-shirt, was of a stocky and muscular build, and was noticeably shorter than the other five. However, the remaining five were all wearing dark shirts or sweatshirts. One (not defendant) was slightly taller than the others and had no mustache. The other four, including defendant, were of roughly the same height and build, and each wore a small mustache. In other words, four of the participants in the lineup, including the accused, appeared to be of roughly the same age, dress, height, weight, and general appearance.

The cases cited by defendant in support of his contention that this lineup denied him due process of law are of no avail to him. In none of these cases did the reviewing court find reversible error in the pretrial identification procedures used. *See Farrell v. State,* 622 N.E.2d 488 (Ind.1993); *Vanway v. State,* 541 N.E.2d 523 (Ind.1989); *Slaton v. State,* 510 N.E.2d 1343 (Ind.1987); *Dorsey v. State,* 490 N.E.2d 260 (Ind.1986), *overruled on different issue, Wright v. State,* 658 N.E.2d 563, 570 (Ind.1995); *Woodson v. State,* 466 N.E.2d 432 (Ind.1984); *Johnson v. State,* 659 N.E.2d 194 (Ind.Ct.App.1995). These cases simply reiterate the applicable legal standards already articulated above. Our review of the totality of the circumstances associated with the lineup under those standards leads to the conclusion that the trial court committed no error of constitutional dimension in allowing the identification evidence at trial.

**B. The February 5 show-up identification involving Jill Barkley only.**

As suggested from the earlier discussion, Jill Barkley first identified defendant as one of the shooters at a one person "show-up" at the police station. This occurred on February 5, 1994—ten days prior to the six person lineup at which she and others would separately identify defendant as one of the assailants. In the earlier proceeding, she was asked to look at a lone suspect (defendant) through one-way glass and at that time positively identified the man in the room as one of the men who fired into the vehicle in which she was a passenger.

In addition to the arguments above aimed more broadly at the second lineup in which Jill Barkley participated, defendant asserts in particular that her testimony should be excluded because of the "inherently suggestive" nature of the initial one-on-one identification. *Wethington,* 560 N.E.2d at 501. Defendant asserts that the initial one-on-one show-up irrevocably tainted Jill Barkley's later police lineup identification as well as her in-court identification.

We need not decide this issue, however. Errors in the admission of evidence are to be disregarded as harmless unless they affect the substantial rights of the defendant. Ind.Trial Rule 61; *McClain v. State,* 675 N.E.2d 329, 331 (Ind.1996). Even if Jill Barkley's testimony should have been excluded, the failure to do so could not have been prejudicial error in light of the fact that four other witnesses identified defendant as one of the men who fired gunshots into McCloud's vehicle and two other witnesses placed him in Anderson, Indiana at the time of the shooting. Any alleged error relating only to Jill Barkley's identification testimony was therefore harmless.

**IV. Failure to compel production and to review police reports *in camera.***

Prior to trial, defendant filed a motion requesting, among other things, production of the following documents:

> Copies of all police reports concerning any investigative activities which have been conducted since the 21st day of March, 1994 with regard to the incident alleged in the charging [sic]. . . .

(R. at 145.) The State objected to providing the reports, and the trial court sustained the objection. Defendant then filed a motion asking the trial court to order that the requested police reports be produced for review by the court *in camera* to determine if there might be discoverable information contained therein. This motion was also denied.

Defendant again raised the issue in a pretrial hearing and was again denied relief.

On appeal, defendant asserts the trial court erred in refusing to grant his motion demanding discovery of police investigative reports and in refusing to compel production for *in camera* review to determine if there might be discoverable information within any such reports.

Decisions relating to discovery requests are committed to the discretion of the trial court and will not be reversed absent clear error in the exercise of that discretion. *Williamson v. State,* 436 N.E.2d 90, 92 (Ind. 1982).

Unless the privilege has been waived, investigative police reports are not discoverable and are considered protected as the work product of the prosecutor. *State ex rel. Keaton v. Circuit Court of Rush County,* 475 N.E.2d 1146 (Ind.1985). Therefore, the trial court did not err in denying defendant's initial request for discovery of the police reports.

The denial of the request for *in camera* review of the police reports for potentially discoverable evidence presents a closer question. In *State ex rel. Crawford v. Superior Court of Lake County,* 549 N.E.2d 374 (Ind.1990), we recognized the continuing vitality of the *Keaton* rule but distinguished the production of police reports from witness statements. We stated that the work product privilege which generally protects police reports from pretrial discovery does not protect substantially verbatim witness statements. *Id.* at 376.

The prosecutor in a criminal case has a constitutional mandate to turn over material exculpatory evidence in its possession. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Johnson v. State,* 584 N.E.2d 1092, 1103–4 (Ind.1992). If a trial judge has concerns about whether the prosecutor might be withholding exculpatory or discoverable information, we stress that *in camera* review is the proper method for resolving these concerns. *State ex rel. Crawford,* 549 N.E.2d at 376 (Where documents containing verbatim statements are interspersed with a police officer's opinions, impressions, and theories, "in camera inspection by the trial court should permit the court to determine whether a document is essentially a verbatim statement and therefore discoverable or essentially a police report containing occasional quotations and thus privileged."). However, this is not a case where specifically named witness statements were being withheld by the State.

Rather, in this instance, defendant made separate requests for "[c]opies of any and all statements, in whatever form, taken from persons who are charged with or suspected of committing the crimes alleged" and "[c]opies of any statements, substantially verbatim accounts of statement and/or audio or videotaped statements and transcripts thereon taken from anyone concerning this case since the 21st day of March, 1994." (R. at 145.) In addition, defendant also sought autopsy reports and medical records pertaining to McCloud and Nunn, "[a] copy of a note received by Detective Tom Hay of the Anderson City Police Department," "[a] copy of a letter received by the Anderson Police Department from Theadell Polk," and copies of the videotapes of police lineup procedures. (R. at 144–45.)

Defendant does not assert the State failed to provide all such requested discovery. The only discovery request he complains of being refused was a non-specific blanket claim for all police reports prepared after a certain date, documents which are specifically excluded from discovery. *Keaton,* 475 N.E.2d at 1148. Nowhere in defendant's motion for *in camera* review did he allege that specific documents of an exculpatory nature were being withheld. Under the circumstances of this case, we find no abuse of discretion in the trial court's refusal to compel production of all police reports for *in camera* review. *Accord State v. Mak,* 105 Wash.2d 692, 718 P.2d 407, 417–18 (1986), *cert. denied, Mak v. Washington,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986) (the mere possibility that some item of undisclosed evidence might help the defense does not require the trial court to conduct an *in camera* review of police investigative files).

## V. Alleged prosecutorial misconduct.

During the course of trial, both Ellis Thomas, Jr. a/k/a Romeo Lee ("Lee") and Ellis Lamont Thomas ("Lamont") were called as witnesses by defendant to support his alibi defense. During cross-examination by the State, both invoked the Fifth Amendment and refused to testify on the basis that their answers to the questions might be self-incriminatory. As a result, the trial court struck portions of Lamont's testimony and all of Lee's testimony. Defendant does not claim error in the striking of the testimony as a result of the witnesses' unwillingness to submit to cross-examination. However, defendant claims that the witnesses' refusal to speak is the result of prosecutorial misconduct.

Prior to trial, Lee and Lamont were charged with murder and the prosecutor refused to grant them immunity from prosecution. Defendant contended at trial that the arrests and refusal to grant immunity denied him the right to compel witnesses on his own behalf and constituted prosecutorial misconduct. Defendant moved for a mistrial on this basis. The motion was denied.

"The State alone has the responsibility of prosecuting crimes. To meet that responsibility, the State, not the defendant, must have the authority to grant immunity." *Walters v. State*, 271 Ind. 598, 602, 394 N.E.2d 154, 157 (1979). In order to support a claim of prosecutorial misconduct with regard to the use of that authority, the defendant must prove that the State's decisions were made with the deliberate intention of distorting the fact-finding process. *Moore v. State*, 655 N.E.2d 1251, 1253 (Ind.Ct.App. 1995). Distortion of the fact-finding process may be established by showing:

> (a) prosecutorial overreaching, through threats, harassment, or other forms of intimidation, has effectively forced the witness to invoke the Fifth Amendment, or the prosecutor has engaged in discriminatory use of immunity grants to gain a tactical advantage; (b) the witness's testimony is also material, exculpatory, and not

cumulative; and (c) the defendant has no other way to obtain the evidence.

*Id.* at 1253, *citing Blissett v. Lefevre*, 924 F.2d 434, 442 (2nd Cir.), *cert. denied*, 502 U.S. 852, 112 S.Ct. 158, 116 L.Ed.2d 123 (1991).

In this case, there is no evidence of prosecutorial overreaching with regard to the charging and arrests of Lamont and Lee as there appears to have been probable cause to believe they were involved with the McCloud shooting. Moreover, defendant has failed to establish that he had no other way to obtain evidence in support of his alibi defense or that the testimony of Lee and Lamont would be anything but cumulative. Defendant's defense was that he was at a party in his own home in Indianapolis at the time of the murder. At least four witnesses testified to that effect at trial.

Defendant has failed to demonstrate reversible error in his assertions of alleged prosecutorial misconduct.

## VI. Refusal to give certain jury instructions.

Four instructions tendered by defendant that relate to witness credibility were refused by the trial court. One instruction cautioned against giving undue consideration to the testimony of law enforcement officers; another advised the jury to give special scrutiny to the testimony of those who may have reason to be hostile to defendant; a third asked the jury not to disregard testimony that might be provided by friends of defendant; and the fourth would have instructed the jury to consider whether the testimony of Kaidi Harvell may have been influenced by the State's promise of immunity. Defendant "readily concedes that the instructions of the type refused by the trial court have been disapproved in Indiana on the basis that they serve to unduly emphasize the testimony of particular witnesses and constitute an improper comment on the competency or weight of such evidence, which invades the province of the jury." (Br. at 29.) A similar concession was made at trial.[1]

---

1. The Court appreciates counsel's acknowledgment of his professional obligation of candor to the court. Ind.Professional Conduct Rule 3.3.

▇ Defendant nevertheless invites this Court to change the law in Indiana. We decline this invitation at this time and in this case. The jury was made aware that Harvell was testifying under a grant of immunity and the trial court instructed the jury generally with regard to taking into account any interest, bias or prejudice the witnesses who testified may have, in compliance with Indiana law. The trial court did not err in refusing the tendered instructions.

VII. Alleged fundamental error in the attempted murder instruction.

▇ In *Spradlin v. State,* we held that "an instruction which purports to set forth the elements which must be proven in order to convict of the crime of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing." 569 N.E.2d 948, 950 (Ind.1991).

Defendant was charged with and found guilty of the attempted murder of Damon Nunn. Nunn, though seriously injured, survived being struck by the bullets fired into McCloud's vehicle. In this case, the trial court's instructions included the statutory definitions for Murder and Attempt but failed to include the required language from *Spradlin* regarding a specific intent to kill the victim.

▇ Defendant's counsel did not object to the court's instructions governing the attempted murder count, thus waiving any allegation of error. Ind.Trial Rule 51(C); Ind. Criminal Rule 8; *Blackmon v. State,* 455 N.E.2d 586, 589–90 (Ind.1983). Nevertheless, defendant would have this Court treat the failure of the trial court to comply with the requirements of *Spradlin* as a "fundamental" error so profound as to not require a contemporaneous objection.

▇ However, as we stated in *Swallows v. State,* "[I]n cases on direct appeal

where intent is not in issue, instructions which fail to advise the jury that specific intent to kill is required to convict a defendant of attempted murder do not necessarily constitute fundamental error." 674 N.E.2d 1317, 1318 (Ind.1996). In this case, there was no evidentiary dispute about the issue of intent. Defendant's defense was that someone else did the shooting while he was in Indianapolis at a party. The issue in this case was identity of the shooter, not intent. Therefore, there was no fundamental error in the lack of a specific intent component in the instructions to the jury regarding the crime of attempted murder. *Id.*

VIII. Convictions for both Attempted Robbery and Attempted Carjacking.

Defendant was convicted of attempted robbery as a class A felony and attempted carjacking. On appeal, he argues that he cannot be convicted of both crimes, arguing that attempted carjacking is a lesser-included offense of attempted robbery.[2]

Defendant argues that on the facts of this case, his convictions for both Attempted Robbery and Attempted Carjacking violate Indiana Code § 35–38–1–6, which provides:

> Whenever: (1) a defendant is charged with an offense and an included offense in separate counts; and (2) the defendant is found guilty on both counts; the judgment and sentence may not be entered against the defendant for the included offense.

Defendant objected at trial to being convicted and sentenced for both Attempted Robbery and Attempted Carjacking, thus preserving the alleged error for appellate review.

The legislature has defined "included offense" to mean:

> [A]n offense that: (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged; (2) consists of an attempt to commit the offense charged or an offense oth-

---

2. Because of our resolution under this argument, we do not address defendant's contention that his conviction for attempted robbery should be dismissed because, "[b]y enacting the carjacking statute, [the General Assembly] chose to remove the taking of a motor vehicle by force out of the robbery statute." Brief of Appellant at 13.

erwise included therein; or (3) differs from the offense charged only in the respect that a less serious harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Ind.Code § 35-41-1-16.

Comparing the robbery and carjacking statutes,[3] robbery as a class A felony is defined as:

A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) by using or threatening the use of force on any person; or

(2) by putting any person in fear;

commits robbery ... [as a] class A felony if it results in serious bodily injury to any person other than a defendant.

Ind.Code § 35-42-5-1 (1993). Similarly, carjacking as a class B felony is defined as:

A person who knowingly or intentionally takes a motor vehicle from another person or from the presence of another person:

(1) by using or threatening the use of force on any person; or

(2) by putting any person in fear;

commits carjacking, a class B felony.

Ind.Code § 35-42-5-2 (1993).

■ Analyzing the statutory offenses of carjacking and robbery as a class A felony against the General Assembly's definition of a lesser-included offense, it is clear that, because a motor vehicle is property, carjacking "is established by proof of the same material elements or less than all the material elements required to establish the commission of ...." robbery as a class A felony. Ind.Code § 35-41-1-16 (1993). In addition, carjacking "differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person ... is required to establish its commission" than is required to establish the commission of robbery as a class A felony. *Id.*

■ Thus, under Indiana Code Section 35-41-1-16, carjacking is a lesser-included offense of robbery as a class A felony and, under Indiana Code Section 35-38-1-6, the conviction for attempted carjacking must be vacated.

In vacating the conviction in this case, we emphasize that Carjacking would not necessarily always be an included offense within Robbery. If a person was convicted of Carjacking for the taking of a motor vehicle and of Robbery for the taking of some *other* property, then ordinarily no "included offense" problems would arise. However, in this case, the Attempted Carjacking charge and the Attempted Robbery charge had identical elements of proof, both being based upon the taking of the same motor vehicle. The "included offense" of Attempted Carjacking must accordingly be vacated.

IX. Denial of request for continuation of the sentencing hearing.

After the jury returned its verdict, the trial court set a hearing on sentencing. The day before the hearing, defendant and his counsel were provided with a copy of the Pre-Sentence Investigation Report that had been prepared in this case. At the beginning of the hearing, defendant moved the court for a continuance of the sentencing hearing to provide him additional time to review the report. This motion was denied. Defendant claims the trial court erred in denying his motion and asks for a remand for a new sentencing hearing.

■ The decision whether to grant a continuance is committed to the discretion of the trial court and will not be reversed absent an abuse of that discretion. *Williams v. State,* 669 N.E.2d 1372, 1386 (Ind.1996).

There is no specific deadline for the filing of a pre-sentence investigation report except that the factual contents or a copy of the report must be furnished "sufficiently in ad-

---

3. Defendant was convicted of attempted robbery and carjacking. Our analysis remains in the substantive offense statutes because the attempt statute provides "a person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted." Ind.Code § 35-41-5-1 (1993).

vance of sentencing so that the defendant will be afforded a fair opportunity to controvert the material included." Ind.Code § 35–38–1–12(b).

■ . This Court has previously stated that "it would be better if trial courts routinely made sure the pre-sentence report was made available more than one day before the sentencing hearing." *Lang v. State,* 461 N.E.2d 1110, 1114 (Ind.1984). However, it is incumbent upon defendant to show how he was prejudiced by a short time period within which to review a pre-sentence report. *Drake v. State,* 555 N.E.2d 1278, 1283 (Ind. 1990).

■ In this case, defendant makes no claim that the pre-sentence report contains factual errors or inaccuracies requiring additional time to try to rebut. In similar cases, we have refused to find error even in instances where the pre-sentence report was provided only a few hours before the sentencing hearing. *Drake,* 555 N.E.2d at 1283; *Lang,* 461 N.E.2d at 1114. Likewise, we find no error here.

## CONCLUSION

Defendant's convictions and sentences for Murder, Attempted Murder, and Attempted Robbery are affirmed. The conviction and sentence for Attempted Carjacking are vacated. The cause is remanded to the trial court for the limited purpose of entering a new sentencing order consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.