

ATTORNEY FOR APPELLANT

Samuel J. Beasley
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Timothy L. Hahn,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 20, 2016

Court of Appeals Case No.
18A05-1603-CR-623

Appeal from the Delaware Circuit
Court

The Honorable Linda Ralu Wolf,
Judge

Trial Court Cause No.
18C03-1310-FB-40

**Brown, Judge.**

[1] Timothy L. Hahn appeals his conviction for aggravated battery as a class B felony. Hahn raises three issues which we revise and restate as:

> I. Whether the trial court improperly denied his motion for discharge under Ind. Criminal Rule 4(B);
>
> II. Whether the trial court abused its discretion in denying Hahn's motion to dismiss based on Indiana's successive prosecution statute; and
>
> III. Whether the trial court erred in refusing Hahn's proposed jury instructions regarding the definitions of accomplice liability and attempt.

We affirm.

### Facts and Procedural History

[2] On August 30, 2013, Kaley Mooney and her boyfriend, Sam Bright, were at Gene's Bar in Muncie, Indiana. Doug and Sheila Shaw lived across a parking lot that was adjacent to the bar and were outside with Sheila's sister, Brandy, and Brandy's husband, Joshua Ireland.

[3] As Mooney and Bright were leaving the bar, Hahn pulled his car into a parking space and Mooney and Bright and the Shaws heard arguing coming from the parked car. Hahn "was hitting on the girl" and "[p]ulling her hair and stuff in the front seat." Transcript at 287. Hahn and the woman in the passenger seat, Renee Ruble,[1] exited the car. While Hahn and Ruble were arguing, the Shaws

---

[1] Sheila testified that Renee's last name was Rumble. At other points in the record, Renee's last name is spelled Ruble.

"hollered over," informing Hahn not to put his hands on the woman. *Id.* at 120. Hahn cursed and yelled, and he and Ruble told the Shaws that they needed to mind their own business.

[4] Sheila walked off the porch with nothing in her hands and argued with Ruble. Doug walked off the porch and approached the scene without a weapon. Ruble swung and hit Sheila, knocking her to the ground. Hahn entered onto the Shaws' yard and started swinging a woman's purse at Doug.

[5] After the purse straps broke, Hahn told Doug "I've got something for you," walked over to the car, retrieved a baseball bat, returned to the scene, started swinging it at Doug, and made contact. *Id.* at 311. Mooney called 911 at 11:32 p.m. Hahn swung the bat "probably a good ten (10) times" and made contact with Doug "probably a good four (4) or five (5) times for sure." *Id.* at 86. Doug was defending himself and had his arms up a few times trying to block himself from being hit by the bat. He turned and lifted his leg, but eventually fell back. Sheila yelled at Hahn to stop. Doug suffered a gash on his left arm, a cut by his left eye, bruising, and fractures in his arm and leg. Hahn and Ruble entered the car and "took off." *Id.* at 88.

[6] Muncie Police Officer Gregory Skaggs received the dispatch regarding a fight in progress at the bar as well as a description of Hahn's vehicle. Officer Skaggs observed a vehicle matching that description and followed Hahn's vehicle for "[a]t the most maybe a couple of minutes." *Id.* at 159. Officer Skaggs then initiated his emergency lights and siren, Hahn's vehicle stopped, Officer Skaggs

stopped, and then Hahn's vehicle started going again and made two different turns before eventually stopping again.

[7] Officer Skaggs waited for backup to arrive given the nature of the call, and Officer Mike Nickens arrived. Hahn was angry and verbally abusive toward the officers and told them that they beat him and that they planted stuff on him just to take him to jail. The officers arrested him for battery and failing to stop.

[8] On September 4, 2013, the State charged Hahn with battery by means of a deadly weapon as a class C felony under cause number 18C03-1309-FC-27 ("Cause No. 27"). On September 9, 2013, the court held an initial hearing, Hahn requested a speedy trial and a public defender, and the court scheduled a jury trial for November 6, 2013. On September 19, 2013, Hahn filed a motion to reduce his $20,000 bond, which the court later denied. On October 2, 2013, Hahn posted bond. On October 7, 2013, the court held a hearing at which Hahn's counsel appeared, and the jury trial date was confirmed. On October 9, 2013, Hahn's bonding company moved to void his bond, and the court granted the motion the same day. On October 17, Hahn was erroneously released from jail and was returned to jail on October 29, 2013.

[9] On October 29, 2013, the trial court granted the State's motion to dismiss Cause No. 27, and, on that same day, the State charged Hahn under cause number 18C03-1310-FB-40 ("Cause No. 40"), the cause from which this appeal arises, with Count I, aggravated battery as a class B felony, Count II, resisting law

enforcement as a class D felony, and Count III, operating a vehicle while intoxicated endangering a person as a class A misdemeanor.

[10] On November 14, 2013, an initial hearing was held at which Hahn appeared without counsel and stated that these charges and the evidence to support them were submitted in August when he was originally charged with a class C felony, that at that time he invoked his right to a fast and speedy trial, that he was scheduled for jury trial on November 6th, and that he was very confused. After some discussion, the court stated that Cause No. 27 was dismissed without prejudice, and after further discussion, the court appointed a public defender, entered a plea of not guilty on Hahn's behalf, and scheduled an omnibus date of December 5, 2013. Hahn then asked "Is this in regards to a fast and speedy ma'am?" *Id.* at 8. The following exchange then occurred:

> THE COURT: Oh it is. You are well within seventy (70) days by making that request today. We anticipated that you would make that request sir.
>
> [Hahn]: Thank you.
>
> THE COURT: Your jury trial is set for January 6, 2014. So that's within the seventy (70) days of your request today.

*Id.* An entry in the chronological case summary dated November 17, 2013, states in part: "Cause set for speedy jury trial on January 6, 2014, at 9:00 a.m. at request of Defendant." Appellant's Appendix II at 9.

[11] On November 22, 2013, a public defender filed an appearance for Hahn. On December 2, 2013, Hahn filed a Motion for Continuing Objection, signed by himself, with respect to the dismissal of Cause No. 27 and the refiling of the information in Cause No. 40. The same day, the court entered an order striking Hahn's pro se filing pursuant to Ind. Trial Rule 11 because Hahn was represented by counsel at the time.

[12] On December 5, 2013, Hahn's counsel filed a motion for continuance of a pretrial conference scheduled for that day and a motion to withdraw. The court granted the motion to withdraw. On December 10, 2013, another public defender filed an appearance for Hahn and filed a motion for a continuance alleging that he needed additional time to prepare for a pretrial conference. The court granted the motion to continue and scheduled a pretrial conference for December 19, 2013.

[13] On December 19, 2013, the court held a pretrial conference in Cause No. 40 at which Hahn's counsel stated that he would come in and listen to recordings of certain hearings, and that he was not going to compromise Hahn's right to have his trial on January 6, 2014. The court confirmed the January 6 trial date.

[14] On December 30, 2013, the State filed a motion to continue the jury trial under Cause No. 40, indicated that Hahn had requested a fast and speedy trial, and requested that Hahn be released from incarceration. That same day, Hahn filed a motion to dismiss pursuant to Criminal Rule 4(B) asserting that he had been "held on a probation violation allegation in Cause No. 18C02-0812-FA-09

based in large part on the allegations in [Cause No. 27], which are the same allegations giving rise to the current charge." *Id.* at 56. He also asserted that he "was apparently mistakenly released from custody by the Delaware County Jail from approximately October 17, 2013 until October 29, 2013." *Id.*

At a hearing held that same day, Hahn's counsel argued that Hahn asked for a speedy trial in August. The court granted the State's motion to continue, ordered Hahn's immediate release, scheduled a jury trial for April 28, 2014, and scheduled a hearing regarding Hahn's motion to dismiss pursuant to Criminal Rule 4(B).

On January 9, 2014, the State filed a response to Hahn's motion to dismiss, and on February 20, 2014, the court held a hearing on the motion. Hahn's counsel asserted that Hahn requested a speedy trial on September 9, 2013, and that he was released on October 17, 2013 and was apprehended on October 29, 2013. On March 21, 2014, the court issued an order denying Hahn's motion to dismiss, stating in part:

> 8. An initial hearing was held on [Cause No. 40] on November 14, 2013 in which [Hahn] again requested a fast and speedy trial. The Court set the jury trial for January 6, 2014 (fifty-four (54) days after he made the request in Cause No. [40]).
>
> 9. [Hahn] was released from incarceration on December 30, 2013.
>
> 10. Criminal Rule 4(B) applies only to an accused who is held in jail. *Goudy v. State*, 689 N.E.2d 686 (Ind. 1997)[, *reh'g denied*].

11. In summary, [Hahn] was released from the Delaware County Jail on October 17, 2013. And then [Hahn] was released within seventy (70) days of his request on November 14, 2013, said release from incarceration occurred on December 30, 2013. Therefore, [Hahn] has no recourse under Criminal Rule 4(B) because he is not in jail.

*Id.* at 77.

On September 30, 2015, the State filed a motion to dismiss Count III, operating a vehicle while intoxicated endangering a person as a class A misdemeanor, and alleged that there was a duplicate filing under cause number 18H01-1402-CM-341 ("Cause No. 341") and that Hahn had pled guilty under that cause number on or about September 23, 2014. The court granted the State's motion to dismiss Count III.

On January 11, 2016, prior to the commencement of a jury trial in Cause No. 40, Hahn filed a motion to dismiss Counts I and II in that cause and argued that "[b]ecause the charged offenses are based on the same conduct and/or on part of a single scheme or plan as the offenses previously charged in [Cause No. 341], the offenses alleged in the Information in this cause could have been – and, therefore, should have been – joined with the offenses charged in [Cause No. 341] under Ind. Code 35-34-1-9," and that prosecution in this case was barred by Ind. Code § 35-41-4-4. *Id.* at 151. The prosecutor argued:

[S]imply because the OWI was separated out and went to City Court, doesn't mean the other two (2) cases, other two (2) charges can't continue. In fact, the resisting law enforcement with a vehicle and aggravated battery could not have been

charged in City Court very simply. They are felonies; the OWI was a misdemeanor. And that was the only thing charged in the City Court case, was the OWI.

Transcript at 36-37. The prosecutor also argued that the aggravated battery and fleeing from the scene were distinct from operating while intoxicated. The court denied Hahn's motion on the basis that Counts I and II were distinct.

[19] At the jury trial, Mooney, Bright, Officer Skaggs, Officer Nickens, Sheila, Doug, and others testified. After the State rested, Hahn testified that a group of people were sitting on the porch of the nearby house, that he and Ruble were not arguing, that Ruble exited the car and argued with a woman on the porch, and that he exited the car. He testified that he picked up Ruble's purse which she had dropped when he heard a beer bottle break, and that, after Sheila and Ruble started fighting, Doug placed himself in between him and the women. He stated that he looked at Doug and said that he just wanted "to get [Ruble] off the ground and get in the bar," and Doug said, "she's getting what she's getting," that he tried to walk around Doug, Doug swung a first punch to his jaw, Hahn threw a punch striking Doug in the jaw, and Doug looked at him and said, "now you're dead." *Id.* at 431-432. Hahn then swung the purse at Doug so that he "could get [Ruble] up off the ground and get in the bar." *Id.* at 433. He also testified that a second bottle was thrown from the porch as he was swinging the purse at Doug. He stated that he was scared because the bottle was thrown, people were coming off the porch, and his friend was on the ground with another woman. He also testified that Doug came after him after

he retrieved the bat and that Ireland remained on the porch and he thought the second bottle was thrown from the porch.

[20] Jeffrey Lehman testified that he knew Hahn since childhood, that he was walking down the sidewalk that night and observed an argument between two groups, Ruble threw the first punch,[2] Sheila also hit Ruble, Hahn struck Doug with Ruble's purse, the purse handles broke, a man threw a beer bottle toward Hahn, Hahn struck Doug a couple more times, and a man grabbed another full beer and threw it at Hahn again. Lehman testified that he went inside the bar, told the bartender what was happening, went back outside, saw Hahn in his car, Hahn told him to tell his sister what happened, and then Hahn left.

[21] Hahn's proposed final instruction No. 2 stated:

> A person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same level or class as the crime attempted.
>
> Ind. Code Ann. § 35-41-5-1 (West)

---

[2] Lehman testified: "So, [Ruble], I think it was [Ruble], I am not positive, I am pretty sure [Ruble] threw a punch." Transcript at 504. On cross-examination, the prosecutor asked: "The female with the defendant, you said threw the first punch?" *Id.* at 518. Lehman answered affirmatively.

Appellant's Appendix III at 225.  Hahn also offered proposed instruction No. 4 which stated:

> A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:
>
> (1)  has not been prosecuted for the offense;
>
> (2)  has not been convicted of the offense; or
>
> (3) has been acquitted of the offense.
>
> Ind. Code Ann. § 35-41-2-4 (West)

*Id.* at 227.

[22]  As to Hahn's proposed instruction No. 2, Hahn's counsel argued that Ireland committed a felony by throwing the bottle even if the bottle missed.  The prosecutor argued that Ireland was not on trial, that attempt is not relevant with respect to someone who is not charged, and that if the instruction was given the State would have to prove only that Hahn attempted a crime of aggravated battery.  The court found that the use of force instruction addressed the issue, that Hahn's counsel could address his concerns through that instruction, and it denied Hahn's proposed instruction No. 2.

[23]  With respect to Hahn's proposed final instruction No. 4, his counsel argued that the Shaws and the Irelands acted in concert and that the jury needed to

understand that if a person is acting with the intent that a felony be committed by somebody else and they aid or induce or cause them to do that, that they can be held responsible. The prosecutor contended that it was not a proper instruction because it would be related to only the person being charged. The court denied proposed instruction No. 4 and stated that Hahn's counsel could make his arguments relating to the use of force instruction.

[24] The court gave Final Instruction No. 16 regarding self-defense which stated:

> It is an issue whether the Defendant acted in self-defense or the defense of another person.
>
> A person may use reasonable force against another person to protect himself from what the Defendant reasonably believes to be the imminent use of unlawful force.
>
> A person is justified in using deadly force, and does not have a duty to retreat, only if he reasonably believes that deadly force is necessary to prevent serious bodily injury to himself or to a third person, or to prevent the commission of a felony.
>
> However, a person may not use force if:
>
> He is committing a crime that is directly and immediately connected to this incident.
>
> He is escaping after the commission of a crime that is directly and immediately connected to this incident.
>
> He provokes a fight with another person with intent to cause bodily injury to that person.

He has willingly entered into a fight with another person or started the fight, unless he withdraws from the fight and communicates to the other person his intent to withdraw and the other person nevertheless continues or threatens to continue the fight.

The State has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense.

*Id.* at 209.

[25] The jury found Hahn guilty of aggravated battery as a class B felony and not guilty of resisting law enforcement as a class D felony. The court sentenced him to fifteen years to be served consecutive to the sentence in cause number 18C02-0812-FA-9.

## *Discussion*

### I.

[26] The first issue is whether the trial court improperly denied Hahn's motion for discharge under Ind. Criminal Rule 4(B). Hahn argues that his conviction for aggravated battery cannot stand because the court violated his right to a speedy trial pursuant to Criminal Rule 4(B).[3] He argues that his release due to a mistake of the State should, at most, toll the seventy-day period for as long as

---

[3] Hahn also argues that his conviction for operating while intoxicated in Cause No. 341 cannot stand because the trial court violated his right to a speedy trial pursuant to Ind. Criminal Rule 4(B)(1). Hahn pled guilty in Cause No. 341 and this appeal relates to Cause No. 40.

he was released, that he took no action inconsistent with his request for a speedy trial, and he did not waive, abandon, or acquiesce in a trial setting beyond the seventy-day limit established by his initial request.

[27] The State argues that a defendant's decision to demand a seventy-day deadline for trial should not be blindly presumed to remain his or her choice even when more complex charges or more severe consequences are at issue, and notes that Hahn did not object to the trial setting of January 6, 2014. The State asserts that the record reflects Hahn's recognition that more serious charges had been filed and that, while his trial should not be unduly delayed, it would be better to begin it on January 6, 2014. It points out that Hahn was not a stranger to the criminal justice system, having been twice convicted of robbery during these proceedings, and it is not unreasonable to expect a defendant in Hahn's position to articulate his wishes. The State also argues that reversal is not warranted even if Hahn's statements at the November 14, 2013 hearing were construed as an objection and points to the motion for continuance filed by his counsel on December 10, 2013, and the December 19, 2013 hearing at which his counsel did not object or ask for discharge.

[28] "The broad goal of Indiana's Criminal Rule 4 is to provide functionality to a criminal defendant's fundamental and constitutionally protected right to a speedy trial." *Austin v. State*, 997 N.E.2d 1027, 1037 (Ind. 2013). "It places an affirmative duty on the State to bring the defendant to trial, but at the same time is not intended to be a mechanism for providing defendants a technical means to escape prosecution." *Id.* The Indiana Supreme Court has noted that

"though Rule 4(B)'s intent is to effectuate the rights guaranteed by the Sixth Amendment to the U.S. Constitution and Article 1, Section 12 of the Indiana Constitution, we emphasize that reviewing Rule 4(B) challenges is separate and distinct from reviewing claimed violations of those constitutional provisions." *Id.*

Ind. Criminal Rule 4(B)(1) provides, in pertinent part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

"The purpose served by Crim. R. 4(B) is to prevent a defendant from being detained in jail for more than 70 days after requesting an early trial." *Williams v. State*, 631 N.E.2d 485, 486 (Ind. 1994), *reh'g denied*. "[F]or Rule 4(B) to apply, the defendant must be incarcerated on the charge for which he seeks a speedy trial . . . ." *Cundiff v. State*, 967 N.E.2d 1026, 1031 (Ind. 2012).

"The onus is on the State, not the defendant, to expedite prosecution." *Jackson v. State*, 663 N.E.2d 766, 769 (Ind. 1996). A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. *Id.* A movant for an early trial must maintain a position which is reasonably consistent with the request that he has made. *Wilburn v. State*, 442 N.E.2d 1098, 1103 (Ind. 1982). "[I]t is incumbent

upon defendant to object at the earliest opportunity when his trial date is scheduled beyond the time limits prescribed by Ind. R. Crim. P. 4(B)(1)." *Smith v. State*, 477 N.E.2d 857, 861-862 (Ind. 1985). "This requirement is enforced to enable the trial court to reset the trial date within the proper time period." *Dukes v. State*, 661 N.E.2d 1263, 1266 (Ind. Ct. App. 1996). "A defendant who permits the court, without objection, to set a trial date outside the 70-day limit is considered to have waived any speedy trial request." *Stephenson v. State*, 742 N.E.2d 463, 488 (Ind. 2001), *cert. denied*, 534 U.S. 1105, 122 S. Ct. 905 (2002).

[32] "[I]n cases where the issue is a question of law applied to undisputed facts, the standard of review—like for all questions of law—is de novo." *Austin*, 997 N.E.2d at 1039. In those cases where a trial court makes a factual finding of congestion or emergency under Criminal Rule 4 based on disputed facts, the standard of review for appellate courts is the clearly erroneous standard. *Id.* at 1040.

[33] In Cause No. 27, Hahn moved for a speedy trial at the initial hearing on September 9, 2013. Even assuming, without deciding, that Hahn's September 9, 2013 motion in Cause No. 27 also applied to Cause No. 40, and not considering the time period between October 17, 2013 until October 29, 2013, when he was released from custody, we cannot say that his arguments warrant reversal.

[34] Based upon Rule 4(B), he was to be brought to trial within seventy days of his September 9, 2013 motion or by November 18, 2013. At the November 14,

2013 hearing, Hahn indicated that he had previously invoked his right to a fast and speedy trial, but did not object to the trial court's scheduling of the trial date for January 6, 2014, which was outside of the seventy-day time period. He asked whether the scheduling of an omnibus date on December 5, 2013, was "in regards to a fast and speedy," the trial court stated, "[y]ou are well within seventy (70) days by making that request today," and that it anticipated that he would make that request, and Hahn did not assert that he was not making a request for a speedy trial that day but rather merely stated, "[t]hank you." Transcript at 11. We also observe that the trial court mentioned that the trial was scheduled for January 6, 2014, at the December 19, 2013 pretrial conference, and Hahn's counsel did not object to the trial date. We conclude that he waived his speedy trial request. *See Goudy v. State*, 689 N.E.2d 686, 691 (Ind. 1997) (addressing defendant's argument relating to Ind. Criminal Rule 4(B) and holding that "defendant waived his earlier speedy trial request by acquiescing in the setting of an omnibus date, and by necessary implication, a trial date, beyond the seventy day limit permitted by Criminal Rule 4(B)(1)"), *reh'g denied*; *Wright v. State*, 593 N.E.2d 1192, 1195 (Ind. 1992) (holding that "it was reasonable to assume that [the defendant] had abandoned his request for a speedy trial" where the defendant "waited nearly a month before filing an objection to the later trial date"), *cert. denied*, 506 U.S. 1001, 113 S. Ct. 605 (1992), *abrogated on other grounds by Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007); *Smith*, 477 N.E.2d at 862 (holding that "[i]nsofar as no timely objection was made by defendant to the trial date being scheduled beyond the seventy-day time limit, defendant's request for an early trial date is deemed waived and

therefore defendant is not entitled to a discharge under Ind. R. Crim. P. 4(B)(1)”); *Jacobs v. State*, 454 N.E.2d 894, 898 (Ind. Ct. App. 1983) (holding that the assertion of a speedy trial violation was untimely when it was raised three days after the court rescheduled the trial date).

[35] To the extent Hahn asserted a second motion for a speedy trial at the November 14, 2013 hearing, the Indiana Supreme Court has held that a second request for a speedy trial is an abandonment of the first request for a speedy trial. *See Minneman v. State*, 441 N.E.2d 673, 677 (Ind. 1982) (“When a defendant files a motion for early trial under Ind. R. Crim. P. 4(B), such filing constitutes an abandonment of previous motions for early trial filed by that defendant.”), *cert. denied*, 461 U.S. 933, 103 S. Ct. 2099 (1983); *Mickens v. State*, 439 N.E.2d 591, 595 (Ind. 1982) (observing that the defendant had filed multiple requests for a speedy trial and holding that the defendant abandoned his initial speedy trial motion by pursuing plea negotiations and by making a second motion rather than by seeking discharge on the basis of the initial motion); *Rutledge v. State*, 426 N.E.2d 638, 640 (Ind. 1981) (“Under the circumstances of this case then, when on January 17, 1979, appellant requested that he be tried within the next succeeding seventy-day period, rather than discharged upon the basis of his first motion, he is deemed to have abandoned that first motion.”); *see also* 16B INDIANA PRACTICE § 19.3 (“A motion for a continuance or a second request for an early trial would also be inconsistent with a prior request for an early trial and would therefore waive the right to be tried within seventy days of the earlier request.”) (footnotes omitted). To the extent Hahn asserted a second motion

for a speedy trial under Rule 4(B) at the November 14, 2013 hearing, he was to be brought to trial within seventy days of his motion or by January 27, 2014.

[36] On December 30, 2013, the court ordered Hahn's immediate release. Given his release prior to the expiration of the seventy-day period, we find that the objective of Ind. Criminal Rule 4(B) was satisfied and he was no longer entitled to the benefits of that Rule. *See Williams*, 631 N.E.2d at 487 ("Once released from custody, a defendant receives no further benefit from Crim. R. 4(B)."). Accordingly, the trial court did not err by denying Hahn's motion for discharge under Ind. Criminal Rule 4(B).[4]

## II.

[37] The next issue is whether the trial court abused its discretion in denying Hahn's motion to dismiss based upon the successive prosecution statute. Hahn argues he was convicted of operating while intoxicated in Cause No. 341 for the same conduct that was charged in Count III of Cause No. 40 relating to the events that occurred on August 30, 2013. He asserts that the charges of aggravated battery, resisting law enforcement, and operating a vehicle while intoxicated in Cause No. 40 all occurred within a few minutes.

[38] The State argues that this case is not within the scope of the successive prosecution statute because it did not file a new additional charge against Hahn,

---

[4] Hahn mentions Ind. Criminal Rule 4(C), but does not develop an argument. Accordingly, this issue is waived.

and that Hahn did not provide the trial court or this Court with a record of Cause No. 341. The State also argues that his argument fails even if the successive prosecution statute applies because his intoxicated driving as charged under Cause No. 341 was temporally distinct and involved different conduct and bore no necessary relationship to the conduct alleged in Counts I and II in Cause No. 40.

[39] Because Hahn appeals the trial court's denial of a motion to dismiss, we review the trial court's decision for an abuse of discretion. *Thompson v. State*, 966 N.E.2d 112, 117 (Ind. Ct. App. 2012) (citing *Haywood v. State*, 875 N.E.2d 770, 772 (Ind. Ct. App. 2007)), *trans. denied*. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or when the court misinterprets the law. *Id.* Ind. Code § 35-34-1-8 governs motions to dismiss by a defendant and provides in part that "[t]he defendant has the burden of proving by a preponderance of the evidence every fact essential to support the motion." Ind. Code § 35-34-1-8(f). "Because the defendant has the burden of proof, the denial of his motion is a negative ruling, reversible only if the evidence is without conflict and leads inescapably to the conclusion that he is entitled to dismissal." *Gregory v. State*, 596 N.E.2d 270, 271 (Ind. Ct. App. 1992), *trans. denied*.

[40] Ind. Code § 35-41-4-4 is titled "When prosecution barred for different offense" and provides:

> (a) A prosecution is barred if all of the following exist:

(1) There was a former prosecution of the defendant for a different offense or for the same offense based on different facts.

(2) The former prosecution resulted in an acquittal or a conviction of the defendant or in an improper termination under section 3 of this chapter.

(3) The instant prosecution is for an offense with which the defendant should have been charged in the former prosecution.

(b) A prosecution is not barred under this section if the offense on which it is based was not consummated when the trial under the former prosecution began.

[41] The Indiana Supreme Court has held that the words "should have been charged" in Ind. Code § 35-41-4-4(a)(3) must be read in conjunction with Indiana's joinder statute which provides in part:

A defendant who has been tried for one (1) offense may thereafter move to dismiss an indictment or information for an offense which could have been joined for trial with the prior offenses under section 9 of this chapter. The motion to dismiss shall be made prior to the second trial, and shall be granted if the prosecution is barred by reason of the former prosecution.

Ind. Code § 35-34-1-10(c). *See Williams v. State*, 762 N.E.2d 1216, 1219 (Ind. 2002). The Court has also held that "[n]either 35-34-1-10(c) nor 35-41-4-4(a)(3) has been interpreted to automatically bar successive prosecutions for separate offenses which are committed at the same time or during the same general

criminal episode." *Seay v. State*, 550 N.E.2d 1284, 1288 (Ind. 1990), *reh'g denied*.

[42]     Ind. Code § 35-34-1-9 governs joinder of offenses and provides in part:

> (a) Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:
>
> > (1) are of the same or similar character, even if not part of a single scheme or plan; or
> >
> > (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

[43]     "Where the State chooses to bring multiple prosecutions for a series of acts constituting parts of a single criminal transaction, it does so at its own peril." *Williams*, 762 N.E.2d at 1219. "To determine whether contemporaneous crimes are part of a single scheme or plan, we examine 'whether they are connected by a distinctive nature, have a common modus operandi, and a common motive.'" *Id.* at 1220 (quoting *Henderson v. State*, 647 N.E.2d 7, 10 (Ind. Ct. App. 1995), *reh'g denied*, *trans. denied* (citations omitted)).

[44]     The parties agree that Count III, operating a vehicle while intoxicated endangering a person as a class A misdemeanor, in Cause No. 40 was based on the same general conduct, that being driving while intoxicated endangering a person on August 30, 2013, as the charge to which Hahn pled guilty in Cause

No. 341. *See* Appellant's Brief at 30 ("[H]e was convicted of Operating While Intoxicated in [Cause No. 341] for the same conduct that was charged in Count 3 of [Cause No. 40] . . . ."); Appellee's Brief at 24 ("The OWI charge in [Cause No. 341] was not new to Hahn's case in [Cause No. 40]; the OWI charge in [Cause No. 341] was Count III of [Cause No. 40].").  However, the parties disagree as to what specific conduct was alleged in Count III in Cause No. 40 and the conduct to which Hahn pled guilty to in Cause No. 341, i.e., whether it was Hahn's driving to the bar or driving away after the encounter with the Shaws.  The State asserts that Hahn's intoxicated operation of a vehicle was complete when he drove into the bar's parking lot.  Hahn asserts that the "operating and resisting charges were based upon the same conduct (driving a car away from Gene's bar immediately following the incident), and, the State argued, were motivated by the incidents that had just happened at Gene's," yet Hahn does not cite to the record for the proposition that the charge in Cause No. 341 related to operating the vehicle after the incident.  Appellant's Brief at 31.

[45] Hahn relies upon *Williams v. State*, 762 N.E.2d 1216 (Ind. 2002).  In that case, an undercover detective encountered the defendant in the parking lot of an apartment complex on October 12, 1998, approached him, purchased a rock of crack cocaine, and then broadcast a description of the defendant.  762 N.E.2d at 1217.  As he began to walk away from the undercover detective, the defendant saw several police cars coming toward him, ran toward a building about a hundred yards away, and locked himself in an apartment.  *Id.*  Officers

obtained the building manager's consent to search the apartment where they found the defendant, arrested him for residential entry, and discovered two rocks of crack cocaine hidden in his sock. *Id.* at 1218.

[46]     The State charged the defendant with residential entry and possession of cocaine (the "Court 9 charges"), the defendant agreed to plead guilty to possession of cocaine as a class D felony and serve 915 days in jail, and the State agreed not to file "habitual or B felony" charges against him. *Id.* After that plea was negotiated on December 8th or 10th and before the conviction was entered on December 29, 1998, the State charged the defendant in a different room of the same court with dealing cocaine within 1,000 feet of a school as a class A felony and possession of cocaine within 1,000 feet of a school as a class B felony (the "Court 20 charges"), and these charges related to the defendant's sale of drugs to the undercover detective on October 12th. *Id.* The defendant pled not guilty to the Court 20 charges, and the State added a charge that the defendant was an habitual offender. *Id.* The defendant moved to dismiss the Court 20 charges, and the court denied the motion. *Id.*

[47]     On appeal, the Indiana Supreme Court disagreed with the trial court's finding that the defendant's entry into a locked apartment after fleeing police was an intervening act sufficient enough for them to have two separate cases. *Id.* at 1220. The Court observed that after buying the cocaine, the undercover detective radioed his description and sent another officer "up there." *Id.* During a pre-trial hearing, the defendant testified that when he turned around "and took a few steps" five or six police cars had arrived. *Id.* He ran and the

police pursued him into an unoccupied apartment. *Id.* The Court concluded that the facts show that the Court 9 and Court 20 charges were based on a series of acts so connected that they constituted parts of a single scheme or plan and should have been charged in a single prosecution. *Id.*

[48] On one hand, if the conduct to which Hahn pled guilty in Cause No. 341 involved his driving away from the bar and fleeing the scene of the battery, then *Williams* could arguably be relied upon to conclude that Counts I and II should have been charged in Cause No. 341. On the other hand, if, as argued by the State, the conduct in Cause No. 341 involved driving to the bar and prior to any encounter with the Shaws, then we could not say that such an offense was connected with Counts I and II in Cause No. 40 by a distinctive nature, a single or common motive, or modus operandi. *See Thompson v. State*, 966 N.E.2d 112, 118-119 (Ind. Ct. App. 2012) (holding that the trial court properly denied the defendant's motion to dismiss where the defendant's prior conviction for driving while suspended had no apparent connection to the drug manufacturing and sales occurring in the house and was merely transportation), *trans. denied*. The record does not include a copy of the charging information or the guilty plea transcript from Cause No. 341 and does not indicate whether the operating while intoxicated charge in Cause No. 341 related to Hahn's act of driving the vehicle to the bar or to his driving away following the incident with the Shaws. As Hahn does not demonstrate that Cause No. 341 related to operating a vehicle after the incident with the Shaws, he has not met his burden and we cannot say that Counts I and II in Cause No. 40 should have been charged in

Cause No. 341. As noted, Ind. Code § 35-34-1-8(f) provides that "[t]he defendant has the burden of proving by a preponderance of the evidence every fact essential to support the motion." Ind. Code § 35-34-1-8(f). Under these circumstances, we cannot say the trial court abused its discretion in denying Hahn's motion to dismiss.

## III.

[49] The next issue is whether the court abused its discretion in instructing the jury. Generally, "[t]he purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind. 2003), *cert. denied*, 540 U.S. 1150, 124 S. Ct. 1145 (2004). Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion. *Id.* at 1163-1164. To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. *Benefiel v. State*, 716 N.E.2d 906, 914 (Ind. 1999), *reh'g denied*, *cert. denied*, 531 U.S. 830, 121 S. Ct. 83 (2000).

[50] Before a defendant is entitled to a reversal, he must affirmatively show that the erroneous instruction prejudiced his substantial rights. *Lee v. State*, 964 N.E.2d 859, 862 (Ind. Ct. App. 2012) (citing *Gantt v. State*, 825 N.E.2d 874, 877 (Ind. Ct. App. 2005)), *trans. denied*. An error is to be disregarded as harmless unless it

affects the substantial rights of a party. *Id.* (citing *Oatts v. State*, 899 N.E.2d 714, 727 (Ind. Ct. App. 2009); Ind. Trial Rule 61).

[51] Hahn argues that his proposed final instructions Nos. 2 and 4 would have made clear to the jury that had he reasonably believed that Doug was acting in accord with the man throwing bottles, and/or the two women fighting Ms. Ruble, that Ireland had attempted to commit a felony, and that he would have been justified in using deadly force, provided the remaining elements of self-defense were satisfied. He also contends he was prejudiced because, if Doug was acting in concert with the man throwing bottles, then Hahn was equally justified in using deadly force against Doug in an effort to escape the threats the two men posed.

[52] The State argues that the trial court did not abuse its discretion because Hahn's self-defense claim was centered around his story that Shaw had threatened to kill him and that Ireland had not remained on the porch but had advanced to the confrontation and thrown two beer bottles. It points out that the trial court noted and Hahn apparently agreed that the instruction on self-defense which was given to the jury would allow Hahn to argue his theory of self-defense without specifically instructing the jury on attempt. The State also argues that Hahn fails to show error in the trial court's refusal to give his proposed instructions.

[53] Hahn does not cite authority for the proposition that instructions on attempt and accomplice liability are required under these circumstances. The court

gave the jury final instruction No. 16 which provided that a person may use reasonable force against another person to protect himself from what the defendant reasonably believes to be the imminent use of unlawful force, and that a person is justified in using deadly force if he reasonably believes that such force is necessary to prevent serious bodily injury to himself or to a third party or to prevent the commission of a felony. The court referenced the self-defense instruction and informed Hahn's counsel that he could make his arguments regarding attempt and accomplice liability through that instruction. During closing argument, Hahn's counsel argued that Doug and Ireland acted together, that Doug aided, induced, and caused Ireland to throw the bottles, and that Ireland's throwing of the beer bottle constituted a felony.

[54] In light of the instruction regarding self-defense, we cannot say that the instructions taken as a whole misstated the law or misled the jury or that Hahn's substantial rights were prejudiced in light of his closing arguments regarding attempt and accomplice liability.

## *Conclusion*

[55] For the foregoing reasons, we affirm Hahn's conviction for aggravated battery as a class B felony.

[56] Affirmed.

Robb, J., and Mathias, J., concur.