## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 21 2020, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEY FOR APPELLEE |
|---|---|
| Tyrion L. McNair | Sierra A. Murray |
| Fort Wayne, Indiana | Deputy Attorney General |
|  | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tyrion L. McNair, | May 21, 2020 |
| *Appellant-Defendant,* | Court of Appeals Case No. 19A-CR-491 |
| v. | Appeal from the Allen Superior Court |
| State of Indiana, | The Honorable Frances C. Gull, Judge |
| *Appellee-Plaintiff,* | The Honorable Wendy W. Davis, Judge |
| | The Honorable Samuel R. Keirns, Magistrate |
| | Trial Court Cause Nos. 02D05-1807-MR-12 02D04-1708-F6-1009 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Tyrion McNair was found guilty of murder and, after the enhancement phase of trial, he was also found guilty of using a firearm in the commission of a felony. The trial court sentenced McNair to serve sixty-five years in the Indiana Department of Correction ("DOC"), enhanced by twenty years for using a firearm in the commission of a felony. McNair appeals pro se, raising the following restated issues for our review: (1) whether the trial court erred in denying his Criminal Rule 4(B) petition for discharge, (2) whether the trial court abused its discretion by excluding evidence, and (3) whether the State presented sufficient evidence to support his conviction for murder.[1] We conclude that the trial court properly denied McNair's Rule 4(B) petition for discharge and that McNair waived appellate review of any alleged error in the exclusion of evidence. We also conclude that the evidence is sufficient to support McNair's murder conviction. Accordingly, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the verdict are as follows. Jabriel Vaughn, Joshua Smiley, and McNair grew up in the same neighborhood and have known each

---

[1] At the time of this offense, McNair was on probation in a separate case. After McNair was convicted of this offense, his probation in that case was revoked. McNair filed a notice of appeal from the order revoking probation, *see* Appellee's Appendix, Volume 2 at 2-5, and this court granted McNair's request to consolidate the probation revocation appeal with the instant one, *see* [Appellant's Appendix] Volume 2 at 14. However, McNair's appellate brief does not present an argument regarding his probation revocation and therefore, he has waived the issue for appeal. *See Davis v. State*, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005) (noting that failure to present a cogent argument constitutes waiver of the issue for appellate review), *trans. denied*.

other for a long time. On March 31, 2018, they spent the day hanging out, smoking marijuana, and driving around in a silver Hyundai Sonata rented in Vaughn's name and paid for by McNair. That evening, Vaughn, Smiley, and McNair went to Coliseum Apartments[2] to purchase some marijuana from a mutual friend, Javon Burnett. When they arrived, Burnett met them at the car, engaged in friendly conversation, and gave them the marijuana. After receiving the marijuana, they left; Smiley was dropped off at his apartment, and Vaughn and McNair went to Vaughn's mother's house.

[3] Around 1:00 a.m. on April 1, Vaughn and McNair returned to Smiley's apartment. Vaughn had his Glock nine-millimeter handgun with an extended magazine which allowed the handgun to carry thirty bullets, including one in the chamber. *See* Transcript, Volume 2 at 211. The three smoked marijuana and later fell asleep. Vaughn went to sleep with his handgun on his lap. Smiley woke up around 8:00 a.m. and heard McNair arguing on the phone with the mother of his children, Tierra Smith. Vaughn was still asleep with his handgun on his lap. When McNair got off the phone, he was very upset and told Smiley, "[L]et's go get some weed." *Id.* at 159. Although Smiley had marijuana, McNair insisted they get some from Burnett.

---

[2] Throughout the trial, Coliseum Apartments was referred by multiple names, including Parnell Park Apartments and Summit Apartments. For the purpose of this appeal, we will refer to it as "Coliseum Apartments."

[4] Smiley contacted Burnett and they agreed to meet at Coliseum Apartments. Before leaving Smiley's apartment, McNair grabbed the handgun from the still-sleeping Vaughn's lap. Smiley drove the silver Sonata with McNair as the passenger. When they arrived at Coliseum Apartments, Burnett was not there yet. While they were waiting, McNair told Smiley that "some stripper females overheard [that Burnett] was supposed to kill [them] for somebody else." *Id.* at 163. Smiley did not believe McNair even though McNair said "he was for real[.]" *Id.* McNair told Smiley to open the trunk and then walked to the back of the car. Smiley thought he was "grabbing something out" of the trunk but was not sure. *Id.* at 164. Smiley remained in the car, playing on his phone. Shortly after McNair exited the car, Smiley looked up and saw a black car leaving the area. Triana Derrick, Burnett's girlfriend, owned a black car and testified that she had dropped Burnett off at Coliseum Apartments that morning.

[5] After the black car pulled away, Smiley saw McNair come from the back of the car, leaving the trunk open, and run between two apartment buildings. *See id.* at 165. Smiley heard multiple gunshots and approximately thirty to sixty seconds later, McNair came running back to the silver Sonata. McNair closed the trunk, entered the passenger side of the car, and told Smiley to drive, directing him to Smith's house. When asked at trial if he "pretty well [knew] what happened at that point[,]" Smiley agreed. *Id.* at 166. While driving to Smith's house, McNair was "panicking" because he could not find his phone and began using Smiley's. *Id.* at 175. Before arriving, McNair unloaded approximately thirteen

bullets from Vaughn's handgun and threw them out the window. When they arrived at Smith's, McNair took a shower and then McNair and Smiley drove back to Smiley's apartment in Smith's car, leaving the silver Sonata at her house. Smiley saw McNair with the handgun as the two went back to Smiley's place; Smiley went inside where Vaughn was still sleeping but McNair drove away. He later returned to Smiley's and told Vaughn that the rental car and his handgun were both "gone." *Id*. at 217.

[6] At approximately 10:00 that morning, shortly after dropping Burnett off at Coliseum Apartments, Derrick called Burnett's cell phone. Burnett's friend Shawn answered, and Derrick heard "people yelling and screaming in the background[.]" *Id*. at 113. Because "nobody was really saying anything," Derrick hung up and called back. *Id*. Shawn again answered and said, "They just killed [Burnett]." *Id*. Corryna Bear, a resident of Coliseum Apartments, testified that as she was getting ready for breakfast, she heard what she thought were "very, very loud knocks at the window . . . [u]nusually loud[.]" *Id.* at 118. She went to the window where she saw an "African-American male," *id.*, who was "taller [with] broad shoulders[,]" *id*. at 125, run from the side of her building to a car. Bear described the car as "a light color, white, silver" with tinted windows. *Id*. at 119. She noticed that the trunk was open and that the man threw something in the trunk before getting in the passenger side. After the car left, Bear and her boyfriend heard screaming and went outside where they saw a body face-down on the ground on the same side of the building Bear had seen the man run from; Bear called the police.

[7]     Officers of the Fort Wayne Police Department ("FWPD") were dispatched to the scene and, upon arrival, they observed a male with gunshot wounds to the head, who they later identified as Burnett. Burnett died from thirteen gunshot wounds. FWPD Detective Jeff Marse found a cell phone on the ground in the parking lot area of Coliseum Apartments. It was later confirmed that the cell phone belonged to McNair.

[8]     On July 6, 2018, the State charged McNair with murder and use of a firearm during the commission of a felony. After the charges were filed, the following occurred:

- July 6, 2018 – McNair was arrested.

- July 18, 2018 – At McNair's initial hearing, he requested an early trial and was appointed a public defender. McNair's trial was set to commence on September 25, 2018.

- July 25, 2018 – McNair's public defender filed his appearance with the trial court.

- August 21, 2018 – McNair's public defender filed a motion to withdraw, citing a conflict of interest.

- August 22, 2018 – The trial court granted McNair's public defender's motion to withdraw after a hearing. However, the early trial date remained scheduled for September 25, the sixty-ninth day since McNair's early trial request.

- August 27, 2018 – McNair's newly appointed public defender filed an appearance and a motion to continue the early trial.

- September 4, 2018 – McNair appeared for a status of counsel hearing and personally objected to a continuance. The trial court granted the motion to continue and re-set McNair's early trial to commence on January 8, 2019. McNair did not object to the new trial date.

- October 22, 2018 – McNair, by counsel, filed a petition for discharge pursuant to Criminal Rule 4(B) alleging no delay had been caused by McNair and the trial court's calendar was not congested.

- November 14, 2018 – The trial court held a hearing on McNair's petition for discharge and denied the motion on November 20, 2018.

[9] Smiley, who already had an unrelated pending federal case, was also charged with crimes similar to McNair's for his involvement in Burnett's murder. However, Smiley entered into a plea agreement with the State prior to trial and, as a condition of his plea agreement, he was required to testify at McNair's trial. Before trial, the State filed a motion in limine seeking to exclude (among other things) "[a]ny and all comments with reference to any prior bad acts allegedly done by any of the State's witnesses[.]" Appellee's Appendix, Volume 2 at 7.

[10] McNair's jury trial commenced on January 8, 2019. Prior to voir dire, the trial court addressed the State's motion in limine. The State explained that Smiley's

state charges related to this case had been resolved and acknowledged that the plea agreement he received was "fair game for cross examination[.]" Tr., Vol. 2 at 33. The State noted, however, that with respect to Smiley's pending federal case, "there have been no representations made to him about anything that may happen on that case in return for his testimony here[.]" *Id.* Therefore, the State argued that information about Smiley's pending federal case was irrelevant because the State had no authority to act on it. Defense counsel disagreed and claimed that Smiley's pending federal case was relevant to the instant case:

> [Counsel]: I believe that it is Mr. Smiley's intent to use his cooperation and testimony in the state matter to bolster any negotiating position in the pending federal case. I believe his testimony will show that, Judge; and so I believe it is most certainly relevant to show . . . why he is, in fact, testifying.
>
> The Court: Well, he's testifying because he got a plea agreement that requires him to testify. I took the plea.
>
> [Counsel]: I understand, Your Honor, but I believe that's an additional factor as to why he is testifying. I believe it is [Smiley's] and his attorney's intent to use this plea and his cooperation in this trial in the federal case[.]

*Id.* at 33-34. The trial court granted the State's motion in limine and noted,

> Well, as it relates to prior bad acts, clearly [Smiley's] plea of guilty of the State charges regarding this case is fair for you to inquire on cross exam. Pending federal charges and what is hoped to happen down in the federal court is not relevant and will not be admissible[.]

*Id.* at 34. McNair did not raise the issue of Smiley's pending federal charges during trial. The jury found McNair guilty as charged. The trial court entered judgment of conviction for murder and using a firearm in the commission of a felony and sentenced McNair to serve eighty-five years in the DOC. McNair now appeals. Additional facts will be supplied as necessary.

# Discussion and Decision

## I. Criminal Rule 4(B)

The Sixth Amendment to the United States Constitution and Article 1, section 12 of the Indiana Constitution both protect the right of an accused to a speedy trial. *Cundiff v. State*, 967 N.E.2d 1026, 1027 (Ind. 2012). Indiana Criminal Rule 4 implements this constitutional right.[3] *Id.* When a defendant moves for speedy trial, he invokes the procedures and deadlines of Criminal Rule 4(B). *Jenkins v. State*, 809 N.E.2d 361, 366 (Ind. Ct. App. 2004), *trans. denied*. Criminal Rule 4(B) provides:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, *except where a continuance within said period is had on his motion*, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70)

---

[3] As our supreme court has noted, however, reviewing a Criminal Rule 4(B) challenge is "separate and distinct from reviewing claimed violations of those constitutional provisions." *Austin v. State*, 997 N.E.2d 1027, 1037 n.7 (Ind. 2013). McNair does not make a constitutional argument.

> calendar days because of the congestion of the court calendar. . . . Provided [], that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance.

Ind. Crim. Rule 4(B)(1) (emphasis added). The overall goal of Criminal Rule 4 "is to provide functionality to a criminal defendant's fundamental and constitutionally protected right to a speedy trial." *Austin*, 997 N.E.2d at 1037. "It places an affirmative duty on the State to bring the defendant to trial, but at the same time is not intended to be a mechanism for providing defendants a technical means to escape prosecution." *Id.* "The determination of whether a particular delay in bringing a defendant to trial violates the speedy trial guarantee largely depends on the specific circumstances of the case." *Wheeler v. State*, 662 N.E.2d 192, 193 (Ind. Ct. App. 1996). When reviewing Criminal Rule 4 claims, we review questions of law de novo and the trial court's factual findings for clear error. *Mefford v. State*, 51 N.E.3d 327, 333 (Ind. Ct. App. 2016). "Clear error is that which leaves us with a definite and firm conviction that a mistake has been made." *Austin*, 997 N.E.2d at 1040 (quotation omitted). We neither reweigh the evidence nor judge the credibility of the witnesses; instead, we consider only the probative evidence and reasonable inferences supporting the judgment. *Id.*

[12] McNair contends that the trial court erred in denying his petition for discharge pursuant to Rule 4(B), claiming that he was not brought to trial within the seventy-day time period. McNair was arrested on July 6, 2018. On July 18, McNair had his initial hearing, where he personally made his request for an

early trial; therefore, the seventy-day clock began to run on that date and would have expired on September 26, 2018. The trial court set McNair's trial to commence on September 25, a date within the seventy-day period. On August 21, 2018, McNair's counsel filed a motion to withdraw after realizing he had a conflict of interest; the trial court granted the motion the next day. However, the trial court confirmed that McNair's early trial would still commence on September 25. On August 27, McNair's newly appointed counsel filed an appearance and a motion for continuance, claiming he would be unable to adequately prepare to represent McNair in a murder trial in less than thirty days. Over McNair's personal objection, the trial court granted the motion for continuance and re-set McNair's trial for January 8, 2019 (a date that exceeded the seventy-day period). There is no indication that McNair objected to the January trial date as being an unreasonable delay.

[13] McNair is not entitled to discharge under Rule 4(B) for at least two reasons. First, when a defendant seeks an early trial under Rule 4(B), he is required to maintain a position which is reasonably consistent with his speedy trial request; therefore, he must object "at his earliest opportunity, to a trial setting that is beyond the seventy-day time period." *Hill v. State*, 777 N.E.2d 795, 797-98 (Ind. Ct. App. 2002) (opinion on reh'g), *cert. denied*, 540 U.S. 832 (2003). "A defendant who permits the court, without objection, to set a trial date outside the 70-day limit is considered to have waived any speedy trial request." *Hahn v. State*, 67 N.E.3d 1071, 1080 (Ind. Ct. App. 2016) (citation omitted), *trans. denied*. McNair abandoned his request for a speedy trial when he failed to object

to a trial date beyond the seventy-day period. *Cf. Goudy v. State*, 689 N.E.2d 686, 691 (Ind. 1997) (holding that the defendant waived his earlier request for a speedy trial by failing to object to a pre-trial hearing set beyond the seventy-day limit).

[14] Second, although the crux of McNair's argument is that he *personally* objected to his defense counsel's request for a continuance and should not be charged with the delay because he was ready to proceed with trial, the law is clear that once counsel is appointed, a defendant speaks to the trial court through counsel and the trial court is not required to respond to a defendant's request or objection. *Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000). In *Underwood*, the court held that the delay from appointed counsel's request for a continuance, where the defendant objected to the request, was nonetheless attributable to the defendant. *Id.* "To require the trial court to respond to both [d]efendant and counsel would effectively create a hybrid representation to which [d]efendant is not entitled." *Id*. Because McNair was represented by counsel, the trial court was free to disregard McNair's personal objection to the continuance. Therefore, the delay from such continuance was attributable to McNair through the actions of his counsel.

[15] McNair's frustration in his trial being delayed when he personally felt prepared to proceed is understandable; however, it is the trial court's prerogative, particularly in a murder case, to assess the challenges of a given situation and evaluate the necessity of delaying a trial. *McGowan v. State*, 599 N.E.2d 589, 592 (Ind. 1992) (ruling that no violation of Criminal Rule 4(B) occurred even

though the defendant personally objected to a continuance because it was within the trial judge's discretion to decide that newly appointed counsel required more time to adequately prepare). McNair's newly appointed defense counsel averred that to effectively represent McNair in his murder trial, he needed more than thirty days to familiarize himself with the complex issues of the case and develop a strategy to defend McNair. Denying the motion to continue might have "impinged [McNair's] right to representation by effective counsel and would have placed assigned counsel in a difficult if not impossible situation." *Roseborough v. State*, 625 N.E.2d 1223, 1225 (Ind. 1993) (holding no violation of Criminal Rule 4(B) where the trial judge extended the trial date after newly appointed counsel explained that he needed further time to prepare for a murder case). The trial court properly exercised its prerogative to continue the trial date under these circumstances. Accordingly, the trial court did not err in denying McNair's petition for discharge.[4]

---

[4] McNair argued in his petition for discharge that his newly appointed counsel should not have been in a position to file a motion to continue because his previous counsel did not actually have a conflict and should not have been allowed to withdraw. McNair does not advance this argument on appeal, however, so even if it had merit, we would be unable to grant him relief as we may only reverse on a ground raised by the appellant. Waiver notwithstanding, although withdrawal of counsel might not result in the *defendant* being charged with the delay, including where it does not appear the defendant caused the withdrawal, *cf. Isaacs v. State*, 673 N.E.2d 757, 763 (Ind. 1996) (noting that if a defendant's actions cause the withdrawal then he is charged with the delay), it could still be a reason for extending the trial date, *see State v. Love*, 576 N.E.2d 623, 625 (Ind. 1991) (noting withdrawal of first counsel coupled with second counsel's lack of preparedness constituted an emergency within the meaning of Criminal Rule 4(B)(1) allowing resetting of trial date within a reasonable time). Such is the case here, where the trial court held a hearing on counsel's motion to withdraw and accepted counsel's position that he had a conflict of interest. There is no indication that McNair caused or contributed to the conflict, and the trial court did not alter the trial date until new counsel alleged he would have insufficient time to prepare.

# II. Exclusion of Evidence

[16] Our standard of review in this area is well-settled. We review the admission or exclusion of evidence for an abuse of discretion. *Troutner v. State*, 951 N.E.2d 603, 611 (Ind. Ct. App. 2011), *trans. denied*. An abuse of discretion occurs when a trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Iqbal v. State*, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004). Generally, errors in the exclusion of evidence are harmless unless they affect the substantial rights of a party. *Redding v. State*, 844 N.E.2d 1067, 1069 (Ind. Ct. App. 2006). We assess the probable impact of the evidence on the trier of fact to determine if an evidentiary ruling affected a party's substantial rights. *Id*.

[17] Prior to trial, the trial court granted the State's motion in limine to exclude any evidence of prior bad acts allegedly committed by any of its witnesses. *See* Tr., Vol. 2 at 34; *see also* Appellee's App., Vol. 2 at 7. McNair now argues that the trial court erred by excluding evidence of Smiley's pending federal case. He contends that Smiley's cooperation in the instant case could have had an impact on his federal case and therefore, Smiley would have a reason to fabricate his testimony. *See* Amended Brief of Appellant at 14. The State responds that McNair failed to object, to make an offer of proof, or to otherwise challenge the trial court's ruling on the motion in limine during trial and therefore, waived any claim of error. We agree with the State.

[18] "A ruling on a motion in limine does not determine the ultimate admissibility of evidence; that determination must be made by the trial court in the context of

the trial itself." *Prewitt v. State*, 761 N.E.2d 862, 871 (Ind. Ct. App. 2002). Therefore, only trial objections preserve a claim of error for appellate review. *Brown v. State*, 783 N.E.2d 1121, 1125 (Ind. 2003). According to Evidence Rule 103(a)(2), a party may only claim error in a ruling to exclude evidence if the error affects a substantial right of the party and the party "informs the court of its substance by an offer of proof, unless the substance was apparent from the context." The purpose of an offer of proof is to convey the point of the witness's testimony and provide the trial court the opportunity to reconsider the earlier evidentiary ruling. *State v. Wilson*, 836 N.E.2d 407, 409 (Ind. 2005). "To accomplish these two purposes, an offer of proof must be sufficiently specific to allow the trial court to determine whether the evidence is admissible and to allow an appellate court to review the correctness of the trial court's ruling and whether any error was prejudicial." *Id*.

[19] Here, as the proponent of evidence that the trial court had preliminarily excluded on the State's motion in limine, it was incumbent upon McNair to reassert his position during Smiley's trial testimony. An offer of proof may or may not have been necessary, as it appears the substance and relevance of the excluded testimony would have been apparent to the trial court based upon the discussions surrounding the motion in limine. Nonetheless, we need not decide whether an offer of proof was required because McNair's failure to raise the issue at all during trial to give the trial court the opportunity to revisit its earlier decision renders any claimed error unavailable on appeal. *See Winn v. State*, 748 N.E.2d 352, 359 (Ind. 2001) (holding, where the trial court granted the State's

motion in limine seeking to exclude certain evidence, that defendant's failure to direct the court on appeal to any offer of proof "or other action taken during trial to raise this [evidentiary] question" meant the exclusion of the evidence was not an available issue on appeal). Thus, we may only address the issue if it rises to the level of fundamental error. *Young v. State*, 746 N.E.2d 920, 924 (Ind. 2001). But McNair has failed to allege fundamental error in his appellate brief.[5] *See Bowman v. State*, 51 N.E.3d 1174, 1179 (Ind. 2016) (finding waiver of fundamental error claim for failure to raise it in initial appellate brief). Therefore, McNair's claim that the trial court erred in excluding evidence is waived and unavailable for review.

## III. Sufficiency of the Evidence

[20]    McNair next argues that the State failed to present sufficient evidence to support his murder conviction. When reviewing the sufficiency of the evidence supporting a conviction, we neither reweigh the evidence nor judge the credibility of witnesses. *Purvis v. State*, 87 N.E.3d 1119, 1124 (Ind. Ct. App. 2017). We consider only the evidence most favorable to the verdict and any reasonable inferences drawn therefrom. *Id*. "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could

---

[5] The "fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013) (citation and internal quotations omitted).

have concluded the defendant was guilty beyond a reasonable doubt." *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).

[21]    A person who knowingly or intentionally kills another human being commits murder, a felony. Ind. Code § 35-42-1-1(1). Therefore, to obtain a conviction of murder in this case, the State was required to prove beyond a reasonable doubt that: (1) McNair (2) knowingly or intentionally (3) killed Burnett. Ind. Code § 35-41-4-1(a) (stating the standard of proof). A conviction for murder may be based entirely on circumstantial evidence, *Sallee v. State*, 51 N.E.3d 130, 134 (Ind. 2016), and the circumstantial evidence need not overcome every reasonable hypothesis of innocence; instead, "[i]t is enough if an inference reasonably tending to support the verdict can be drawn from the circumstantial evidence." *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995).

[22]    Here, the State presented sufficient evidence to the jury to support McNair's conviction for murder. On the morning of April 1, McNair told Smiley that he wanted to get marijuana from Burnett despite Smiley already having some. Before leaving to meet Burnett, McNair retrieved Vaughn's handgun. Smiley and McNair then drove the silver Sonata to meet Burnett. When they arrived, McNair told Smiley that he believed that Burnett was going to kill them. McNair then told Smiley to pop the trunk and walked to the back of the car. Burnett arrived and walked toward the back of the apartments. McNair then ran in the direction Burnett had gone. Seconds later, Smiley heard several gunshots and then saw McNair run back to the silver Sonata. Several apartment residents also heard gunshots and saw a man run back to a light-colored car that

quickly left the area. While Smiley drove them away from the apartment complex, Smiley observed McNair unloading the bullets from Vaughn's handgun and tossing approximately thirteen bullets out the window. McNair's cellphone was also discovered at the scene of the crime. Moreover, the State presented evidence to the jury that McNair took extensive steps to conceal his involvement in Burnett's death by showering immediately afterward, changing vehicles, and getting rid of the silver Sonata Smiley and McNair drove to the apartment complex and Vaughn's handgun that McNair took to the scene. Though the handgun was not recovered, Stacey Hartman, a firearm examiner, confirmed that the bullets that killed Burnett all came from the same handgun and that the type of handgun that Vaughn owned (a Glock nine-millimeter) could have fired those bullets. *See* Tr., Vol. 3 at 57, 59-60. Although no one directly identified McNair as the shooter, this is a classic case of circumstantial evidence sufficient for a reasonable trier of fact to conclude that McNair was guilty beyond a reasonable doubt. *See, e.g., Lacey v. State*, 755 N.E.2d 576, 578 (Ind. 2001) (holding that the State presented sufficient circumstantial evidence to support the defendant's conviction for felony murder although no one identified him and no fingerprints linked him to the crime).

[23] McNair denies that he was the person who committed the crime, claiming that he did not match the description of the shooter and that the windows in the vehicle he was riding in were not tinted, as witnesses reported. However, McNair's argument is merely an invitation for us to reweigh the evidence and reassess witness credibility – an invitation that we cannot accept. *See Purvis*, 87

N.E.3d at 1124. Based on the foregoing, the State presented sufficient evidence to support McNair's murder conviction.

# Conclusion

[24] The trial court did not err in denying McNair's Criminal Rule 4(B) petition for discharge and McNair waived appellate review of any alleged error in the exclusion of evidence of Smiley's pending federal case. Additionally, the State presented sufficient evidence to support McNair's murder conviction. Accordingly, we affirm.

[25] Affirmed.

May, J., and Vaidik, J., concur.